STATE OF CONNECTICUT *v.* BENTON KELLEY [*]
(12941)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and HULL, Js.

Argued December 2, 1987—decision released February 23, 1988

*Kent Drager,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Michael E. O'Hare,* assistant state's attorney, with whom were *Francis Carino,* chief court advocate, and, on the brief, *Angelo Pizzola,* legal intern, for the appellee (state).

PETERS, C. J. The dispositive issue on appeal is whether the transfer of a child[1] pursuant to General Statutes (Rev. to 1983) § 46b-127, as amended by Public Acts 1983, No. 83-402, § 2,[2] from the docket of Juvenile Matters to the regular criminal docket of the Supe-

---

[1] General Statutes § 46b-120 defines "child" as "any person under sixteen years of age."

[2] General Statutes (Rev. to 1983) § 46b-127, as amended by Public Acts 1983, No. 83-402, § 2, provides: "(Formerly Sec. 51-308). CHILD CHARGED WITH MURDER OR FELONY TRANSFERRED TO REGULAR CRIMINAL DOCKET, WHEN. The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years; (2) any child referred for the violation of any provision of title 53a which is designated as a class A felony, if such violation was committed after such child attained the age of fourteen, provided such child has previously been adjudicated a delinquent at any age for a violation of any provision of title 53a, which at the time of such violation was designated a class A felony; or (3) any child referred for the violation of any provision of title 53a which is designated as a class B felony, provided such violation was committed after such child attained the age of fourteen years, and further provided such child has previously been adjudicated delinquent for two violations of any provision of title 53a, which at the time of such violations were designated a class A or B felony. No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged. Upon the effectuation of the trans-

rior Court implicates the court's subject matter jurisdiction. After his transfer from the docket of Juvenile Matters to the regular criminal docket, the defendant, Benton Kelley, pleaded nolo contendere to an information charging him with murder in violation of General Statutes § 53a-54a[3] and was sentenced to a term of twenty-five years imprisonment. The defendant appeals, challenging the propriety of the proceedings leading to his transfer to the regular criminal docket. We conclude that the defendant's claims of error are not properly before us. Because his plea of nolo contendere was conditioned on his ability to appeal his transfer, the trial court erred in accepting the plea.

The state recited the following factual basis for the defendant's plea of nolo contendere at the time it was accepted by the trial court: On January 30, 1984, the defendant had an altercation with the victim in a bar on North Street in New Britain. The defendant left the

fer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age. If the action is dismissed or nolled or if such child is found innocent of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen."

[3] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

bar and, accompanied by another individual, returned a short while later with a shotgun. Another argument arose between the victim and the defendant, which culminated in the defendant's shooting the victim in the chest. The victim subsequently died from the shotgun wound.

Although the defendant was only fourteen years old at the time he allegedly committed this offense, the state sought to have him tried for murder. After his arrest, the defendant was referred to the Superior Court for Juvenile Matters. The state filed a petition of delinquency pursuant to General Statutes § 46b-128,[4] alleging that the defendant had committed murder and then moved to have the defendant transferred to the regular criminal docket pursuant to General Statutes § 46b-127. The defendant objected to the transfer on the ground that the transfer provisions were unconstitutional. The trial court, *Goldstein, J.,* overruled the objection and, after holding the hearing required under § 46b-127, found that there was probable cause to believe the defendant had committed murder and ordered him transferred to the regular criminal docket.[5]

---

[4] General Statutes § 46b-128 provides in relevant part: "(Formerly Sec. 51-309). INVESTIGATION OF DELINQUENCY COMPLAINT. NONJUDICIAL DISPOSITION. PETITION OF DELINQUENCY. Whenever the superior court is in receipt of any written complaint filed by any person, any public or private agency or any federal, state, city or town department maintaining that a child's conduct constitutes delinquency within the meaning of section 46b-120, it shall make a preliminary investigation to determine whether the facts, if true, would be sufficient to be a juvenile matter and whether the interests of the public or the child require that further action be taken. If so, the court may authorize the filing of a verified petition of alleged delinquency . . . ."

[5] The defendant subsequently filed an appeal challenging the propriety of his transfer to the regular criminal docket but withdrew the appeal in light of our decision in *In re Juvenile Appeal (85-AB),* 195 Conn. 303, 488 A.2d 778 (1985), holding that a juvenile transfer was not a final judgment for the purposes of appeal. Under Public Acts 1986, No. 86-185, such orders are now appealable. General Statutes §§ 46b-126, 46b-127.

On August 31, 1984, in the proceedings on the regular criminal docket, the trial court, *E. O'Connell, J.*, held the probable cause hearing mandated by General Statutes § 54-46a, concluding that there was probable cause to believe that the defendant had committed the offense charged. The defendant thereupon entered a plea of not guilty. On October 1, 1985, the defendant elected to withdraw his prior plea and entered a plea of nolo contendere to the murder charge. At no time subsequent to his transfer to the trial court did the defendant ever raise the validity of his transfer through a motion to dismiss.

On appeal the defendant claims that the trial court erred in: (1) concluding that § 46b-127 was constitutional; (2) failing to provide the defendant with a full evidentiary hearing as required by § 46b-127; (3) admitting the defendant's written statement and refusing to allow the results of a polygraph test and an out-of-court statement by the defendant; and (4) finding probable cause to believe the defendant had committed murder. We conclude that the defendant's claims do not implicate the subject matter jurisdiction of the Superior Court and that the defendant failed properly to reserve them for review on appeal; accordingly, we do not reach their merits.

I

It is well established that "an unconditional plea of guilty or nolo contendere, intelligently and voluntarily made, operates as a waiver of all nonjurisdictional defects and bars the later assertion of constitutional challenges to pretrial proceedings. . . . Therefore, only those issues fully disclosed in the record which relate either to the exercise of jurisdiction by the court or to the voluntary and intelligent nature of the plea are ordinarily appealable . . . ." (Emphasis and citations omitted.) *State* v. *Madera,* 198 Conn. 92, 97–98,

503 A.2d 136 (1985). The defendant argues that his claims involving his transfer from the docket for Juvenile Matters to the regular criminal docket are reviewable on appeal because they implicate the Superior Court's subject matter jurisdiction. We do not agree.

In 1978, the General Assembly enacted General Statutes § 51-164s, which merged the Juvenile Court and the Superior Court in order to maximize the efficiency of scarce judicial resources. Under § 51-164s, "[t]he superior court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute. All jurisdiction heretofore conferred upon and exercised by the court of common pleas and the juvenile court prior to July 1, 1978 shall be transferred to the superior court on July 1, 1978." By this enactment, the legislature vested in the Superior Court the jurisdiction that had until then resided in the Juvenile Court. All juvenile matters now come under the administrative umbrella of the family division of the Superior Court. Practice Book § 3.[6] The chief court administrator is empowered, by General Statutes § 51-5a,[7] to assign any judge of the Superior Court at

---

[6] "[Practice Book] Sec. 3. FAMILY DIVISION

"The family division of the superior court shall consist of the following parts:

"(1) J–Juvenile matters including neglect, dependency, delinquency, families with service needs and termination of parental rights.

"(2) S–Support and paternity actions.

"(3) D–All other family relations matters, including dissolution of marriage cases."

[7] "[General Statutes] Sec. 51-5a. DUTIES AND POWERS OF CHIEF COURT ADMINISTRATOR. The chief court administrator: (1) Shall be the administrative director of the judicial department and shall be responsible for the efficient operation of the department, the prompt disposition of cases and the prompt and proper administration of judicial business; (2) shall meet periodically at such places and times as he may designate with any judge, judges, or committee of judges, and with the probate court administrator to transact such business as is necessary to insure the efficient administration of the judicial department; (3) may issue such orders, require such

any time to any division of the Superior Court, even though the legislature has expressed its strong preference that judges assigned to juvenile matters have a special understanding "of all factors affecting the best interests of children" and should, "[i]f practicable . . . be assigned to hear juvenile matters for not less than eighteen months." General Statutes § 51-165 (d).[8]

Despite merger, the legislature has preserved a separate system for the disposition of cases involving juveniles accused of wrongdoing. Under General Statutes § 46b-122, "[a]ll matters pending in the juvenile court on July 1, 1978, and all matters brought on or after July 1, 1978, which matters are juvenile matters, as defined in section 46b-121,[9] shall continue to be kept

reports and appoint other judges to such positions to perform such duties, as he deems necessary to carry out his responsibilities; (4) may assign, reassign and modify assignments of the judges of the superior court to any division or part of the superior court and may order the transfer of actions under sections 51-347a and 51-347b; and (5) may provide for the convening of conferences of the judges of the several courts, or any of them, and of such members of the bar as he may determine, for the consideration of matters relating to judicial business, the improvement of the judicial system and the effective administration of justice in this state."

[8] General Statutes § 51-165 (d) provides: "Any judge assigned to hear juvenile matters should have a commitment to the prompt resolution of disputes affecting the care and custody of children with full understanding of all factors affecting the best interests of children and, if practicable, shall devote full time to juvenile matters. If practicable, any such judge should be assigned to hear juvenile matters for not less than eighteen months."

[9] "[General Statutes] Sec. 46b-121. (Formerly Sec. 51-302). JUVENILE MATTERS DEFINED, AUTHORITY OF COURT. Juvenile matters include all proceedings concerning uncared-for, neglected or dependent children and youth and delinquent children within this state, termination of parental rights of children committed to a state agency, matters concerning families with service needs and contested termination of parental rights transferred from the probate court, but does not include matters of guardianship and adoption or matters affecting property rights of any child or youth over which the probate court has jurisdiction. In such juvenile matters, the superior court shall have authority to make and enforce such orders directed to parents, including any person who acknowledges before said court paternity

separate and apart from all other business of the superior court as far as is practicable, except matters tranferred under the provisions of sections 46b-126[10] and 46b-127, which matters shall be transferred to the regular criminal docket . . . ." To implement this mandate, General Statutes § 46b-133 (b) requires that "[w]henever a child is brought before a judge of the superior court, such judge shall immmediately have the case proceeded upon as a juvenile matter." General

of a child born out of wedlock, guardians, custodians or other adult persons owing some legal duty to a child or youth therein, as it deems necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child or youth subject to its jurisdiction or otherwise committed to or in the custody of the commissioner of children and youth services. Said court shall also have authority to grant and enforce injunctive relief, temporary or permanent in all proceedings concerning juvenile matters. If any order for the payment of money is issued by said court, the collection of such money shall be made by said court, except orders for support of children committed to any state agency or department, which orders shall be made payable to and collected by the department of administrative services. In juvenile matters, the court shall have authority to make and enforce orders directed to persons liable hereunder on petition of said department of administrative services made to said court in the same manner as is provided in section 17-324, in accordance with the provisions of subsection (b) of section 17-31i, section 17-32, 17-82e, 17-295, 17-295a, 46b-129 or 46b-130, and all of the provisions of section 17-324 shall be applicable to such proceedings. Any judge hearing a juvenile matter may make any other order in connection therewith within his authority to grant as a judge of the superior court and such order shall have the same force and effect as any other order of the superior court."

[10] General Statutes (Rev. to 1983) § 46b-126, as amended by Public Acts 1983, No. 83-402, § 1, provides: "(Formerly Sec. 51-307). CHILD CHARGED WITH A CLASS A FELONY OR SERIOUS JUVENILE OFFENSE TRANSFERRED TO REGULAR CRIMINAL DOCKET, WHEN. (a) The court shall hold a transfer hearing to determine whether it is appropriate to transfer and may transfer from the docket for juvenile matters to the regular criminal docket of the superior court any child referred for the commission of a class A felony, or for any serious juvenile offense designated as a class B or C felony if such child has previously been adjudicated a delinquent for a serious juvenile offense, as defined in section 46b-120, provided such child has attained the age of fourteen at the time the alleged delinquent act was committed. If the child is or has been under the custody of the commissioner of children and youth services, the commissioner shall provide any relevant information concerning the amenability of the child to treatment for use at the

Statutes § 46b-145 prohibits the criminal prosecution of children except as provided in §§ 46b-126 and 46b-127.[11]

It is clear that these statutes require the maintenance of a separate juvenile docket within the family division of the Superior Court. The question before us is whether provision for a separate juvenile docket reflects a legislative judgment that the juvenile docket is vested with subject matter jurisdiction over juvenile cases that is separate and distinct from the subject matter jurisdiction otherwise vested in the Superior Court. Notwithstanding the defendant's claim to the contrary, we conclude that no such distinction has been created in the subject matter jurisdiction of the unified Superior Court. The only statutory pronouncement that

transfer hearing. No such transfer shall be valid unless, prior thereto, the court has made written findings after a hearing, that there is probable cause to believe that (1) the child has committed the act for which he is charged; (2) the child is not amenable to treatment in any institution or state agency or other available facility designed for the care and treatment of children to which said court may effect placement of such child which is suitable for his care or treatment; and (3) the prior adjudications of the child, together with the serious and dangerous nature of the acts and the physical, mental and emotional history and condition of the child, are such that the child is a danger to society and requires more secure and longer term handling than the juvenile justice system is able to provide and the institutions to which said court may sentence a defendant sixteen years of age or over are more suitable for the care and treatment of such child. Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age. If the action is dismissed or nolled or if such child is found innocent of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen.

"(b) There shall be established or designated by the department of children and youth services a secure facility or facilities within the state devoted to the care and treatment of children, which children are under the jurisdiction of the superior court. A consideration for admission to such a facility shall be adjudication for a serious juvenile offense."

[11] Under General Statutes § 46b-145, "[n]o child shall be prosecuted for an offense before the superior court, nor shall the adjudication of such court that a child is delinquent in any case be deemed a conviction of crime except as provided in sections 46b-126 and 46b-127."

directly addresses jurisdiction is § 51-164s, and that section expressly confers the former jurisdiction of the juvenile court on "the superior court." The statute describing the administrative status of matters formerly pending in the Juvenile Court provides, consistently with § 51-164s, that such juvenile matters "shall continue to be kept separate and apart from all other business of the superior court *as far as is practicable* . . . ." (Emphasis added.) General Statutes § 46b-122. Read conjointly, these statutes persuade us that questions relating to the propriety of the transfer of a juvenile from the docket for Juvenile Matters to the regular criminal docket do not implicate the Superior Court's subject matter jurisdiction.[12]

Rather than implicating subject matter jurisdiction, issues relating to transfers between the juvenile and the regular criminal docket involve considerations that are analogous to those of the law of venue. It is a well established rule that, outside the area of administrative appeals, venue is not a jurisdictional but a procedural question; consequently, venue, unlike subject matter jurisdiction, can be waived by the parties. See *State* v. *Orsini,* 187 Conn. 264, 269, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982); *Fine* v. *Wencke,* 117 Conn. 683, 684–85, 169 A. 58 (1933); cf. *Bank of Babylon* v. *Quirk,* 192 Conn. 447, 449, 472 A.2d 21 (1984); *Reed* v. *Reincke,* 155 Conn. 591, 598, 236 A.2d 909 (1967). In the instant appeal, the defendant challenges the validity of his transfer under a statute that is, by its nature, procedural. He therefore cannot rely on principles of subject matter jurisdiction as authority for us to reach the merits of these claims.

---

[12] General Statutes 46b-140 (c) states in part that "[a]ny child or youth coming within the jurisdiction of the court, who is found to be mentally ill, may be committed by said court to the commissioner of children and youth services . . . . " Given the clear import of the 1978 merger, the word "jurisdiction" in § 46b-140 (c) denotes the Superior Court's general jurisdiction and does not imply a separate jurisdiction over Juvenile Matters.

## II

Even if the court did not lack subject matter jurisdiction, the defendant maintains nonetheless that his nolo contendere plea did not waive his claims relating to the validity of his transfer to the regular criminal docket because his plea expressly reserved his right to appeal these issues. Having expressly conditioned the plea on a right of appellate review, the defendant asserts that he has reserved his appellate rights in one of two ways. Principally, he argues that an expressly conditional plea of nolo contendere automatically confers access to appellate review. Alternatively, he maintains that, even if the fact that the plea was conditional does not of itself warrant review by this court, this court should exercise its supervisory authority over the administration of justice to reach his claims. While we agree that the defendant intended his plea to be conditional on his right to appeal, we conclude nonetheless that he did not properly reserve his claims for review.

Before we can address these alternate positions, we must examine their predicate: Does the record disclose that the defendant's plea of nolo contendere was in fact conditional? Despite the state's argument to the contrary, we conclude that the defendant made his plea of nolo contendere conditional on his right to appeal the validity of his transfer and that the trial court, without objection by the state, accepted it as such.[13] During the plea canvass the following colloquy occurred between defense counsel and the trial court:

"[Defense counsel] . . . [T]he reason for the plea of nolo contendere is that there are a number of cases

---

[13] Relying on the defendant's statement at the plea canvass that the only promise made to him regarding his plea was that the state would recommend twenty-five years imprisonment, the state claims that the defendant's plea cannot be construed as conditional. This contention is belied by the remainder of the record.

which involve similar circumstances to [the defendant's]. And that is his status as a juvenile and whether he belongs in this court at all. Insofar as it is possible, we do not wish to waive any of those rights, should it be declared at a later time in any of those cases that [the defendant] does not belong in this court at all. Now we have reserved those rights at various stages of the proceeding. . . .

"So your Honor, I'm submitting the nolo contendere plea subject to those comments that, should the Supreme Court decide that the transfer itself was not proper, it is the intention of the defense to reserve whatever rights it may have with regard to that.

"The Court: All right. But that's the only condition that's imposed on the plea of nolo contendere; is that correct?

"[Defense Counsel]: Yes, your Honor. . . ." Although the import of this colloquy is not free from all ambiguity, we conclude that it should be construed as conditional, as the defendant maintains.

In order to determine whether the conditionality of the defendant's plea of nolo contendere, of itself, warrants appellate review of his claims, we must rehearse the circumstances under which an appeal can be taken from a conditional plea of nolo contendere. In 1982, the legislature enacted General Statutes § 54-94a, which modified the broad waiver of nonjurisdictional defects implicit in a plea of nolo contendere. Under § 54-94a, a defendant may enter a plea of nolo contendere conditional on the right to take an appeal from a trial court's denial of a motion to suppress evidence based on an unreasonable search and seizure or from a denial of a motion to dismiss. State v. Madera, supra, 98; see also State v. Telesca, 199 Conn. 591, 596-97, 508 A.2d 1367 (1986). In State v. Madera, supra, 98-99, we held that a defendant's express reservation of a claim fall-

ing outside of the ambit of § 54-94a, such as a challenge to the admissibility of his confession at trial, was not reviewable on appeal. It follows from *Madera* that a reserved claim of error does not automatically become reviewable under the statute simply because the defendant makes manifest his intent to enter a conditional plea of nolo contendere. The defendant in this case has offered no reasoned argument for departure from the rule of *State* v. *Madera.* Accordingly, he cannot prevail on his contention that his manifest intention on the record to enter a conditional plea automatically entitles him to review of the claims he hoped to reserve for appeal.

As an alternate basis for appellate review, the defendant, relying on *State* v. *Chung,* 202 Conn. 39, 44–45, 519 A.2d 1175 (1987), asks us to exercise our inherent supervisory authority over the administration of justice to dispose of his claims on their merits. In *State* v. *Chung,* the defendant, subsequent to a plea of nolo contendere, sought appellate review of the denial of his motion to suppress his confession as involuntarily and unintelligently made. Although we determined that the claim he had reserved for appeal fell outside the scope of § 54-94a, we invoked our supervisory authority to review his claim on the merits. Id., 43–45. That decision depended upon a conjunction of three special circumstances: (1) both the defendant and the state urged us to exercise our supervisory authority, all parties at trial having had the clear understanding and expectation that appellate review would be available; id., 44; (2) the defendant's appeal presented a single issue that could adequately be reviewed upon the record then available; id.; and (3) the defendant's claim could otherwise be tested only by recourse to a full, burdensome criminal trial. Id., 45.

The defendant's appeal in this case is markedly different. The state has vigorously objected to plenary con-

sideration of the defendant's claims at this time. The defendant has raised a multiplicity of constitutional and statutory claims relating to his transfer to the regular criminal docket, upon which the trial court has not yet finally ruled because the defendant never raised them in a motion to dismiss the information. A remand would furnish the defendant an opportunity to file such a motion; Practice Book § 815; and the trial court would then have an occasion to determine which of his claims of error are properly encompassed thereby. Should the trial court, at that juncture, deny the motion to dismiss, the defendant would be able to seek review of the denial subsequent to a proper conditional plea under § 54-94a and Practice Book § 4003 (b).[14] Thus the defendant might not be required to endure an entire trial to obtain appellate review of his claims. Accordingly, we decline to consider the merits of the defendant's claims at this time.

The final issue that we must resolve, therefore, is whether, on the present record, we should affirm the judgment of the trial court, as the state urges us to do, or remand the case for further proceedings. The state's argument for affirmance is premised on the proposition that the defendant's plea of nolo contendere was not in fact conditional. See *State* v. *Gilnite*, 202 Conn.

[14] Practice Book § 4003 (b) provides: "With the approval of the court, after a hearing to consider any objections thereto, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any motion made prior to the close of evidence, which motion must be specified in such written reservation. If the defendant prevails on appeal, the judgment shall be set aside and the defendant shall be allowed to withdraw his plea after the case has been remanded to the trial court. The court shall not accept a plea of guilty or nolo contendere pursuant to this subsection where the adverse determination of the specified motion would not have a significant impact on the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere or guilty plea where the record available for review of the ruling upon the specified motion is inadequate for appellate review of the court's determination thereof."

369, 376, 521 A.2d 547 (1987). We have, however, already concluded that, in this case, contrary to the facts of *State* v. *Gilnite,* the defendant intended to enter a conditional plea of nolo contendere and the trial court accepted his plea as such. As in *State* v. *Madera,* supra, 107, therefore, this defendant's plea was, at least in part, conditioned on preservation of his rights of appeal. The trial court mistakenly accepted the defendant's plea of nolo contendere with a condition that could not be fulfilled under our procedures. Under these circumstances, the defendant's conviction cannot be permitted to stand.

There is error, the judgment is set aside and the case is remanded to the trial court for further proceedings.

In this opinion the other justices concurred.