CHARLES HAIGH, JR. *v.* VICTORIA HAIGH
(AC 17378)

Landau, Spear and Healey, Js.

Argued March 30—officially released September 22, 1998

*Nancy E. Wildes*, for the appellant (plaintiff).

*Susan M. Connolly*, for the appellee (defendant).

*Opinion*

HEALEY, J. The plaintiff, Charles Haigh, Jr., appeals from the trial court's judgment dismissing his appeal from a Probate Court decree terminating his parental rights in his minor son. On appeal, the plaintiff claims that the trial court improperly dismissed the appeal on the grounds of (1) insufficient process because the appeal from probate was made returnable to the Superior Court on Monday, July 1, 1996, instead of on a Tuesday in violation of General Statutes § 52-48, and (2) improper venue because although the appeal was actually returned to the Superior Court in the judicial district of New London, certain appeal documents with which the defendant, Victoria Haigh, was "served" directed her to appear at the Superior Court, Juvenile Matters at Montville.

On April 30, 1996, the Probate Court for the district of New London issued a decree terminating the plaintiff's parental rights in his son. On May 29, 1996, the plaintiff moved the Probate Court for permission to appeal that decree, and that court granted its approval to do so. Thereafter, the plaintiff's appeal, which bore the return

date of July 1, 1996, was served on the defendant, the plaintiff's former wife and mother of the child, and returned to the Superior Court in the judicial district of New London at New London.[1] On July 1, 1996, which was a Monday, the defendant appeared in person in the Superior Court for Juvenile Matters at Montville because the plaintiff's appeal indicated that it was to be heard in Montville.[2] The court at Montville, *Driscoll, J.*, dismissed the plaintiff's appeal on that day for the plaintiff's failure to appear. Upon learning of the dismissal, the plaintiff filed a motion on July 12, 1996, to vacate the dismissal of July 1, 1996. In October, 1996, after a hearing, the Juvenile Court vacated the dismissal.

---

[1] General Statutes § 45a-186 (b) provides in relevant part: "Any [appeal from an order of a court of probate] shall be filed in the superior court for the judicial district in which such court of probate is located except that . . . (2) any appeal in a matter concerning . . . termination of parental rights . . . shall be filed in the superior court for juvenile matters having jurisdiction over matters arising in such probate district."

The plaintiff's appeal to the Superior Court for the judicial district of New London at New London did not comply with the requirements of this statute. This failure to comply, however, does not render the Superior Court without subject matter jurisdiction. Our Supreme Court considered the issue of "whether provision for a separate juvenile docket reflects a legislative judgment that the juvenile docket is vested with subject matter jurisdiction over juvenile cases that is separate and distinct from the subject matter jurisdiction otherwise vested in the Superior Court." *State* v. *Kelley*, 206 Conn. 323, 331, 537 A.2d 483 (1988). The court in *Kelley* concluded that the juvenile court does not have subject matter jurisdiction separate and distinct from the Superior Court. Id. The court stated, "The only statutory pronouncement that directly addresses jurisdiction is [General Statutes] § 51-164s, and that section expressly confers the former jurisdiction of the juvenile court on 'the superior court.' " *State* v. *Kelley*, supra, 331–32. The Supreme Court indicated that statutes promulgating rules for a "separate system" in the juvenile court; id., 329; such as § 45a-186 (b), involve considerations that are analogous to those of the law of venue and venue can be waived by the parties. See id., 332 and n.12. We find that the parties here waived venue and that the Superior Court in New London had subject matter jurisdiction to consider the case.

[2] It was not necessary for the defendant to appear in person on July 1, 1996, in the Superior Court in Montville. Rather, the defendant or her attorney should have filed an appearance in writing. See Practice Book §§ 3-1 and 3-2.

On November 4, 1996, the defendant filed her appearance in the Superior Court in the judicial district of New London. On January 21, 1997, the defendant moved that court to dismiss the plaintiff's appeal "on the grounds that defective process renders this court without jurisdiction over the subject matter of the action."[3] On February 10, 1997, the court, *Hurley, J.*, granted the motion to dismiss. During the hearing on that motion, the plaintiff requested that the court consider his motion to amend the return date, and the court declined to decide that motion and recommended it be claimed for a hearing at a later date. On February 14, 1997, the plaintiff filed his "Motion to Open Dismissal [and] Motion to Waive Fees."[4] On May 5, 1997, the court denied that motion. This appeal followed.

Before we address the issues articulated by the plaintiff, we must confront the issue of subject matter jurisdiction raised by the defendant in her brief. She claims that the issue on appeal is "whether subject matter jurisdiction is a waivable defect" pursuant to Practice Book §§ 142 through 144, now §§ 10-30 through 10-32.[5]

[3] Although the defendant's motion of January 21, 1997, does not so state, the defendant's brief in this court maintains that the plaintiff's appeal was "defective" because of (1) failure to assign a proper return date, (2) insufficiency of process and (3) improper venue. The plaintiff in his brief argues that those are the three claims made in the trial court as to why the defendant claims that his appeal was "defective." In fact, the defendant made only two claims before the trial court. At a hearing on February 10, 1997, the defendant argued: "I think the fatal defect, Your Honor, is the combined defect of the wrongful return date and also the defect directing my client to go to Montville when the papers are being returned to New London." "We review this case on the theory upon which it was decided below." *Blancato* v. *Feldspar Corp.*, 203 Conn. 34, 44, 522 A.2d 1235 (1987); *Fuessenich* v. *DiNardo*, 195 Conn. 144, 151, 487 A.2d 514 (1985).

[4] The plaintiff argued in that motion that the procedural effect of granting the motion to dismiss was that there was no pending case. As such, the plaintiff was unable to claim the motion to amend the return date for later argument as the trial court had suggested.

[5] Practice Book § 142, now § 10-30, titled, "Motion to Dismiss," provides: "Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion

"[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Community Collaborative of Bridgeport, Inc.* v. *Ganim*, 241 Conn. 546, 552, 698 A.2d 245 (1997), quoting *Golden Hill Paugussett Tribe of Indians* v. *Southbury*, 231 Conn. 563, 570, 651 A.2d 1246 (1995); accord *Kinney* v. *State*, 213 Conn. 54, 58, 566 A.2d 670 (1989); *Pantlin & Chananie Development Corp.* v. *Hartford Cement & Building Supply Co.*, 188 Conn. 253, 258, 449 A.2d 162 (1982); *Savoy Laundry, Inc.* v. *Stratford*, 32 Conn. App. 636, 639, 630 A.2d 159, cert. denied, 227 Conn. 931, 632 A.2d 704 (1993); *Vincenzo* v. *Warden*, 26 Conn. App. 132, 135, 599 A.2d 31 (1991). "Subject matter jurisdiction, unlike jurisdiction of the person, cannot be created through consent or waiver." *Castro* v. *Viera*, 207 Conn. 420, 429–30, 541 A.2d 1216 (1988), and cases cited therein. Jurisdiction over the subject matter is the court's power to hear

---

to dismiss within thirty days of the filing of an appearance. Except in summary process matters, the motion shall be placed on the short calendar to be held not less than fifteen days following the filing of the motion, unless the court otherwise directs."

Practice Book § 143, now § 10-31, titled, "[Motion to Dismiss]—Grounds," provides: "The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process. This motion shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record.

"If an adverse party objects to this motion he shall, at least five days before the motion is to be considered on the short calendar, file and serve in accordance with Sec. 120 a memorandum of law and, where appropriate, supporting affidavits as to facts not apparent on the record."

Practice Book § 144, now § 10-32, titled, "[Motion to Dismiss]—Waiver Based on Certain Grounds" provides: "Any claim of lack of jurisdiction over the person or improper venue or insufficiency of process or insufficiency of service of process is waived if not raised by a motion to dismiss filed in the sequence provided in Secs. 112 and 113 and within the time provided by Sec. 142."

and decide cases of the general class to which the proceedings at issue belong. See *Lauer* v. *Zoning Commission*, 220 Conn. 455, 460, 600 A.2d 310 (1991); *Shea* v. *First Federal Savings & Loan Assn. of New Haven*, 184 Conn. 285, 288, 439 A.2d 997 (1981). "Where a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." *Demar* v. *Open Space & Conservation Commission*, 211 Conn. 416, 425, 559 A.2d 1103 (1989).

In making her claim that the trial court properly granted her motion to dismiss, the defendant argues that the "combination of [the] two defects," the improper return date and improper venue, "are fatal to the plaintiff in sustaining his appeal" and deprive the court of subject matter jurisdiction. In that regard, she refers to the provision in § 52-48 that "[p]rocess in civil actions . . . brought to the Superior Court may be made returnable on any Tuesday in any month" and "shall designate the place where court is to be held."[6] The defendant argues that the return day of July 1, 1996, which was a Monday, was a fatal defect.[7] She claims that it is well settled that an improper return date "affects" the court's jurisdiction over the subject matter. The defendant maintains that until a proper return is made to the court, the court is unable to consider the matter since there is nothing before the court to

---

[6] General Statutes § 52-48, titled, "Return day of process," provides: "(a) Process in civil actions, including transfers and applications for relief or removal, but not including summary process actions, brought to the Superior Court may be made returnable on any Tuesday in any month. The return day in any summary process action may be any week day, Monday through Saturday, except a holiday.

"(b) All process shall be made returnable not later than two months after the date of the process and shall designate the place where court is to be held."

[7] The defendant argues that although the defect of the improper return date is a curable one, the plaintiff never cured it.

consider. For this proposition she cites *Danziger* v. *Shaknaitis*, 33 Conn. App. 6, 11–12, 632 A.2d 1130, rev'd, 228 Conn. 914, 636 A.2d 846 (1994). The defendant contends that the plaintiff should not prevail on his argument that her motion to dismiss was untimely because subject matter jurisdiction is not waivable and can be raised at any time.

The defendant also claims that the court "similarly lacked jurisdiction" because the process directed her to Montville. She maintains that the incorrect Montville reference violates "fundamental notions of fairness and due process," which demand at least that she be informed of the geographical location of the court to which the papers have been returned. She claims that this is also a fatal defect implicating the court's subject matter jurisdiction and, therefore, the case was properly dismissed.

In response, the plaintiff claims that the defendant improperly relies on *Danziger* v. *Shaknaitis*, supra, 33 Conn. App. 12,[8] to change the issue on appeal to a question of subject matter jurisdiction. The plaintiff stresses that he is not making any argument that the defendant ever waived subject matter jurisdiction, as he recognizes that it cannot be waived. Rather, what he does claim is that an improper return date is not a subject matter jurisdiction defect. The plaintiff in effect maintains that the incorrect Monday return date is an "insufficiency of process" defect that is curable and that the procedure provided by General Statutes § 52-72[9] supports his position.

---

[8] *Danziger* v. *Shaknaitis*, supra, 33 Conn. App. 6, was summarily reversed by our Supreme Court in light of its decision in *Concept Associates, Ltd.* v. *Board of Tax Review*, 229 Conn. 618, 621, 642 A.2d 1186 (1994). In *Danziger*, the "principal issue on appeal [was] whether an amended complaint, served after the return date of the original writ of summons attached to the complaint and changing the return date from an improper day to an appropriate day, relates back to the date of original service so as to survive a motion for summary judgment under General Statutes § 52-584 [the relevant statute of limitations]." *Danziger* v. *Shaknaitis*, supra, 7.

[9] General Statutes § 52-72 provides in relevant part: "(a) Any court shall allow a proper amendment to civil process which has been made returnable

In explicating his claim, the plaintiff relies heavily on *Concept Associates, Ltd.* v. *Board of Tax Review*, 229 Conn. 618, 621–22, 642 A.2d 1186 (1994). The plaintiff contends that the trial court should have granted his motion to amend the return date and that doing so would not have prejudiced the defendant. With regard to the Montville reference, the plaintiff claims that the defendant, by untimely filing her motion to dismiss, waived her claims of defects of insufficiency of process, including venue pursuant to Practice Book § 10-32.

We first take up the claimed lack of subject matter jurisdiction because of the incorrect return date. "Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. *Greco* v. *Keenan*, 115 Conn. 704, 705, 161 A. 100 [1932]." *Johnson* v. *Zoning Board of Appeals*, 166 Conn. 102, 111, 347 A.2d 53 (1974); see *Andover Ltd. Partnership I* v. *Board of Tax Review*, 232 Conn. 392, 400, 655 A.2d 759 (1995) (claim of lack of subject matter jurisdiction). "A trial court should make every effort to adjudicate the substantive controversy before it, and, where practicable, should decide a procedural issue so as not to preclude hearing the merits of an appeal." *Killingly* v. *Connecticut Siting Council*, 220 Conn. 516, 522, 600 A.2d 752 (1991) (claim of lack of subject matter jurisdiction).

Section 52-72, as construed by our Supreme Court in *Concept Associates, Ltd.*, not only furthers this policy

to the wrong return day or is for any other reason defective, upon payment of costs taxable upon sustaining a plea in abatement. . . .

"(c) If the court, on motion and after hearing, finds that the parties had notice of the pendency of the action and their rights have not been prejudiced or affected by reason of the defect, any attachment made by the original service and the rights under any lis pendens shall be preserved and continued from the date of service of the original process as though the original process had been in proper form. A certified copy of the finding shall be attached to and served with the amended process."

but illuminates our analysis in the present case. In *Concept Associates, Ltd.*, the Supreme Court not only stated that "it appears that [§ 52-72] was enacted in response to decisions of this court holding that an improper return date was a jurisdictional defect that could not be corrected," but also pointed out that "[i]ndeed, this court has stated that the purpose of § 52-72 'is to provide for amendment of otherwise incurable defects that go to the court's jurisdiction.' *Hartford National Bank & Trust Co.* v. *Tucker*, 178 Conn. 472, 478–79, 423 A.2d 141 (1979), cert. denied, 445 U.S. 904, 100 S. Ct. 1079, 63 L. Ed. 2d 319 (1980)." *Concept Associates, Ltd.* v. *Board of Tax Review*, supra, 229 Conn. 623; see *Coppola* v. *Coppola*, 243 Conn. 657, 663, 707 A.2d 281 (1998). It determined that "[t]he apparent intent of the legislature in enacting § 52-72 was to prevent the loss of jurisdiction merely because of a defective return date." *Concept Associates, Ltd.* v. *Board of Tax Review*, supra, 623. That court also rejected the claim that § 52-72 applied only to amendments to correct a defective return date sought before the correct return date has passed. The court disagreed with the defendant's claim "that such a limitation is implicit in the words 'a proper amendment' [in § 52-72] because there is no longer a case before the court once the return date has passed." Id. In eschewing such a strict construction, the *Concept Associates, Ltd.*, court stated that "[a]s a remedial statute, § 52-72 must be liberally construed in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.) Id. Recently, our Supreme Court pointedly stated: "The legislature, in enacting § 52-72, expressed an intent to reject the draconian result of dismissal of the plaintiff's cause of action because of a defect involving the return date." *Coppola* v. *Coppola*, supra, 665.

We agree with the plaintiff that the defendant on appeal is attempting to frame the issue strictly in terms

of subject matter jurisdiction and her alleged "waiver" of that, when the issue to be resolved is whether an incorrect return date is a fatal subject matter jurisdictional defect. The plaintiff's analysis invoking § 52-72 and the interpretation of that statute by *Concept Associates, Ltd.*, controls the resolution of the issue. *Concept Associates, Ltd.*, is directly applicable and presents a scenario similar to what exists in this case, in which the plaintiff attempted to cure the incorrect return date. We note that the defendant does not even mention § 52-72, but rather elects to rest on § 52-48 for her argument that the trial court was left with nothing before it. This is a case where the remedial statute, § 52-72, "must be liberally construed in favor of [one] whom the legislature intended to benefit." (Internal quotation marks omitted.) *Concept Associates, Ltd.* v. *Board of Tax Review*, supra, 229 Conn. 623.

Next, we address the improper Montville reference, which is basically a claim of improper venue. The terms "jurisdiction" and "venue" are not synonymous. Jurisdiction has to do with the authority or power of a court to hear and decide "the cause of action presented to it and its source is the constitutional and statutory provisions by which it is created." (Internal quotation marks omitted.) *Second Injury Fund* v. *Lupachino*, 45 Conn. App. 324, 343, 695 A.2d 1072 (1997). Venue, on the other hand, concerns only the place where the case may be tried, and venue requirements are created for the convenience of the parties. See *State* v. *Evans*, 9 Conn. App. 349, 354–55, 519 A.2d 73 (1986); 77 Am. Jur. 2d 608, Venue § 1 (1997). Our Supreme Court has said that "[i]t is a well established rule that, outside the area of administrative appeals, venue is not a jurisdictional but a procedural question; consequently, venue, unlike subject matter jurisdiction, can be waived by the parties." *State* v. *Kelley*, 206 Conn. 323, 332, 537 A.2d 483 (1988); see generally *State* v. *Evans*, supra, 354–55; 77 Am.

Jur. 2d 654–55, supra, §§ 1, 47; 92 C.J.S. 773–75, Venue §§ 75–78 (1955). "[V]enue is a matter that goes to process rather than substantive rights . . . ." *American Dredging Co.* v. *Miller*, 510 U.S. 443, 453, 114 S. Ct. 981, 127 L. Ed. 2d 285 (1994). By filing her motion to dismiss seventy-eight days after filing her appearance, the defendant waived any claim of improper venue.[10]

The question remains as to the nature of our remand. When the trial court granted the defendant's motion to dismiss on February 10, 1997, it remarked: "I think the motion to amend the return date may be filed, but it should not be decided at this time. I think that should be claimed for a hearing at a later date." On February 14, 1997, the plaintiff filed a "Motion to Open Dismissal [and] Motion to Waive Fees."[11] The plaintiff's purpose in filing that motion was to seek an opening of the trial court's February 10, 1997 decision granting the defendant's motion to dismiss so that the plaintiff could argue his motion to amend the incorrect return date. On May 5, 1997, the trial court heard and denied the plaintiff's "Motion to Open Dismissal [and] Motion to Waive Fees." In doing so, the trial court stated: "Well, I think the law seems clear that you can't correct the jurisdiction, that is, the Montville versus New London. I think I have to follow that law. So I'll have to deny [the plaintiff's] motion to open the judgment."

The analytical distillate of what we have concluded is that the trial court improperly granted the defendant's motion to dismiss on February 10, 1997, and that it should have reached and granted the plaintiff's motion to correct the incorrect return date.

The judgment of dismissal is reversed and the case is remanded with direction to grant the plaintiff's

[10] See footnote 5.

[11] See footnote 2.

motion to correct the return date and, thereafter, to proceed according to law.

In this opinion the other judges concurred.