## IN RE SHONNA K.*
## (AC 23107)

Foti, Dranginis and Flynn, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued March 24—officially released June 3, 2003

*Anne Louise Blanchard*, with whom were *Douglas M. Crockett* and, on the brief, *Catherine Holahan*, for the appellant (respondent).

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

FOTI, J. The respondent, Shonna K., appeals from the judgment of the trial court denying her application

for a temporary injunction[1] requiring the petitioner, the commissioner of children and families (commissioner), to provide her a clinically appropriate support placement. The respondent argues that the court improperly determined that it lacked subject matter jurisdiction because she had reached the age of eighteen. We agree and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are necessary for our resolution of the respondent's appeal. The respondent was committed to the commissioner at a young age.[2] She suffered from various mental illnesses that required therapeutic treatment.[3] On July 6, 2001, as she approached the age of eighteen, she filed an application for a temporary injunction. She sought to prohibit the commissioner from transferring her to the department of public health until the commissioner secured an appropriate placement. The respondent requested that the commissioner provide her with a twenty-four hour supported, community based placement. She argued that the failure to obtain such a placement would place her mental health at risk of an irreparable injury.

A hearing on the respondent's application was held on July 12, 2001. The court heard testimony from Elizabeth

[1] We acknowledge at the outset the general rule that "decisions either granting or denying temporary injunctions are not final judgments and are therefore not immediately appealable." (Internal quotation mark omitted.) *Brown* v. *Brown*, 69 Conn. App. 209, 210 n.1, 794 A.2d 550 (2002). The facts and circumstances of this case, however, concluded the rights of the parties so that further proceedings could not affect them; see *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983); therefore, the general rule does not apply.

[2] General Statutes § 46b-129 (j) provides in relevant part that "[u]pon finding and adjudging that any child or youth is uncared-for, neglected or dependent, the court may commit such child or youth to the Commissioner of Children and Families. . . ."

[3] The record reveals that the respondent is mentally disabled with severe emotional problems stemming from childhood physical and sexual abuse. She has been diagnosed with bipolar disorder, oppositional defiant disorder and attention deficit disorder. As a result of her disability, she is prone to frequent episodes of aggressive, and sometimes violent, behavior.

D'Amico, an employee of the department of public health, who testified that the department could provide an appropriate placement for the respondent. The court also heard testimony from Antonio Tigeleiro, a social worker with the department of children and families. The hearing then was continued until July 19, 2001.

At the July 19, 2001 hearing, the parties entered into an agreement that was read into the record. The parties agreed to the following terms: "[The commissioner] will transition [the respondent] to . . . [the department of public health] for placement in accordance with the transition plan developed under the [commissioner's] and [the department's] interagency agreement. In the event [the department] is unable or unwilling to provide a clinically appropriate program for [the respondent], then [the commissioner] will provide or arrange for a clinically appropriate program for [the respondent], if she accepts [the commissioner's] requirements for voluntary services, pursuant to the applicable statutes." The attorney representing the commissioner then clarified the agreement by stating that "[i]n other words . . . the translation of it to plain language is [that] if [the respondent] blows the placement and [the department of public health] is unable to place her but provides other services, then [the commissioner] will find her placement as long as she is in compliance with their criterias for voluntary services."

The respondent was sent to a placement provided by the department of public health. Shortly after she became eighteen years old, the placement failed. As a result, she was incarcerated for failing to comply with department regulations and was removed from the placement. The respondent then filed a second application for a temporary injunction requesting the court to order the commissioner[4] to provide her with a therapeu-

---

[4] Although the respondent was eighteen at the time the second temporary injunction was filed on her behalf, she still sought to remain in the care and supervision of the commissioner. General Statutes § 17a-11 (g) provides

tic, twenty-four hour supported, community based residential placement. That application was filed with the Superior Court for juvenile matters. The court issued its memorandum of decision, holding that it lacked subject matter jurisdiction due to the respondent's age and, therefore, it dismissed the application. This appeal followed. Additional facts will be set forth as necessary.

I

The respondent claims that the court improperly determined that it lacked subject matter jurisdiction over the second application for a temporary injunction. Specifically, she argues that the Superior Court for Juvenile Matters is a court of general jurisdiction and, therefore, as with any other division of the Superior Court, it maintained jurisdiction even after she became eighteen years old. We agree.

As an initial matter, we set forth the applicable legal principles and standard of review. "Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy." (Internal quotation marks omitted.) *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675 A.2d 845 (1996).

"[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form

that "[n]otwithstanding any provision of sections 17a-1 to 17a-26, inclusive, and 17a-28 to 17a-49, inclusive, to the contrary, any person already under the care and supervision of the Commissioner of Children and Families who has passed such person's eighteenth birthday but has not yet reached such person's twenty-first birthday, may be permitted to remain voluntarily under the supervision of the commissioner, provided said commissioner, in said commissioner's discretion, determines that such person would benefit from further care and support from the Department of Children and Families." See also General Statutes § 46b-129 (j). Thus, it is clear that the legislature envisioned situations in which the commissioner would maintain care and supervision of persons older than eighteen.

it is presented . . . and the court must fully resolve it before proceeding further with the case. . . . Subject matter jurisdiction, unlike jurisdiction of the person, cannot be created through consent or waiver. . . . Where a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Olympia Mortgage Corp.* v. *Klein*, 61 Conn. App. 305, 307, 763 A.2d 1055 (2001). "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 81, 818 A.2d 758 (2003); see also *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission*, 76 Conn. App. 199, 204, 821 A.2d 269 (2003).

At this point, a brief review of the history of the Superior Court will facilitate the resolution of the respondent's appeal. "In 1978, the General Assembly enacted General Statutes § 51-164s, which *merged the Juvenile Court and the Superior Court* in order to maximize the efficiency of scarce judicial resources. *Under § 51-164s, '[t]he superior court shall be the sole court of original jurisdiction for all causes of action,* except such actions over which the courts of probate have original jurisdiction, as provided by statute. *All jurisdiction heretofore conferred upon and exercised by the court of common pleas and the juvenile court prior to July 1, 1978 shall be transferred to the superior court on July 1, 1978.'* By this enactment, the *legislature vested in the Superior Court the jurisdiction that had until then resided in the Juvenile Court.* All juvenile matters now come under the administrative umbrella of the family division of the Superior Court.

Practice Book § 3 [now § 1-4]. The chief court adminis-
trator is empowered, by General Statutes § 51-5a, to
assign any judge of the Superior Court at any time to
any division of the Superior Court, even though the
legislature has expressed its strong preference that
judges assigned to juvenile matters have a special
understanding 'of all factors affecting the best interests
of children' and should, '[i]f practicable . . . be
assigned to hear juvenile matters for not less than eigh-
teen months.' General Statutes § 51-165 (d)." (Emphasis
added.) *State* v. *Kelley*, 206 Conn. 323, 328–29, 537 A.2d
483 (1988).

Thus, "the legislature adopted a uniform court sys-
tem, *vesting in the Superior Court the power to enter-
tain all actions* except those in which the Probate Court
had original jurisdiction . . . ." (Citations omitted;
emphasis added.) *Southington '84 Associates* v. *Silver
Dollar Stores, Inc.*, 237 Conn. 758, 762–63, 678 A.2d 968
(1996). To promote an efficient use of judicial
resources, the Superior Court has been divided into
four divisions: Family, civil, criminal and housing. Each
division is further divided into parts. See General Stat-
utes § 51-164t; Practice Book §§ 1-3 through 1-7,
inclusive.

With the foregoing background in mind, we turn to
the present case. The court, specifically the Superior
Court for Juvenile Matters, stated in its memorandum of
decision that it had jurisdiction only in juvenile matters
involving children or youths.[5] See General Statutes

---

[5] Our legislature has defined a "child" as "any person under sixteen years
of age"; General Statutes § 17a-1 (5); and a "youth" as "any person at least
sixteen years of age and under nineteen years of age . . . ." General Statutes
§ 17a-1 (6). General Statutes § 1-1d provides in relevant part that "any person
eighteen years of age or over shall be an adult for all purposes whatsoever
and have the same legal capacity, rights, powers, privileges, duties, liabilities
and responsibilities as persons heretofore had at twenty-one years of age,
and 'age of majority' shall be deemed to be eighteen years."

§ 46b-121. The court concluded, therefore, that once the respondent had reached the age of eighteen, it no longer had jurisdiction over her application for a temporary restraining order and, accordingly, dismissed the application.

Subsequent to the enactment of § 51-164s, both our Supreme Court and this court have repeatedly stated that in this state's unified court system, all "civil matters, including *juvenile matters, fall within the subject matter jurisdiction of the Superior Court.*" (Emphasis added.) *State* v. *Ledbetter*, 263 Conn. 1, 4 n.9, 818 A.2d 1 (2003); see also *West Haven* v. *Norback*, 263 Conn. 155, 166 n.12, 819 A.2d 235 (2003); *State* v. *Angel C.*, 245 Conn. 93, 108 n.17, 715 A.2d 652 (1998); *State* v. *Kelley*, supra, 206 Conn. 331–32; *Haigh* v. *Haigh*, 50 Conn. App. 456, 458 n.1, 717 A.2d 837 (1998); *Davis* v. *Naugatuck*, 15 Conn. App. 185, 192, 543 A.2d 785 (1988), overruled in part on other grounds, *Southington '84 Associates* v. *Silver Dollar Stores, Inc.*, supra, 237 Conn. 769.

Our Supreme Court's decision in *State* v. *Kelley*, supra, 206 Conn. 323, provides us with guidance on the issue of subject matter jurisdiction. In *Kelley*, the court held that the transfer of a child from the docket of juvenile matters to the regular criminal docket of the Superior Court did not implicate the court's subject matter jurisdiction. Id., 332. Although the legislature preserved a separate system for the disposition of cases involving juveniles accused of criminal acts, the court stated that the juvenile docket was not vested with subject matter jurisdiction separate and distinct from that of the Superior Court. Id., 331. The court concluded that "[r]ather than implicating subject matter jurisdiction, issues relating to transfers between the juvenile and the regular criminal docket involve considerations that are analogous to those of the law of venue.* It is a well established rule that, outside the

area of administrative appeals, venue is not a jurisdictional but a procedural question; consequently, venue, unlike subject matter jurisdiction, can be waived by the parties." (Emphasis added.) Id., 332; see also *Haigh* v. *Haigh,* supra, 50 Conn. App. 465.

This case requires that we interpret § 51-164s. We start by examining the language of § 51-164s, which, as we have stated, provides in relevant part that "[t]he Superior Court shall be the sole court of original jurisdiction . . . . All jurisdiction heretofore conferred upon and exercised by . . . the Juvenile Court prior to July 1, 1978 shall be transferred to the Superior Court on July 1, 1978." Thus, the language, the most important factor in statutory interpretation; *State* v. *Courchesne,* 262 Conn. 537, 577, 816 A.2d 562 (2003) (en banc); expressly confers to the Superior Court *all jurisdiction* that previously had been held by the Juvenile Court.

Furthermore, § 51-164t, which authorizes the Superior Court to be separated into divisions, in part to maximize efficiency and to provide the highest standard of justice, makes no mention of splitting jurisdiction among the various divisions. The chief court administrator is authorized to assign to each division as many judges as deemed advisable in the best interest of court business. General Statutes § 51-164t (b). General Statutes § 46b-1 provides that "[m]atters *within the jurisdiction of the Superior Court* deemed to be family relation matters shall be matters affecting or involving . . . (11) juvenile matters as provided in section 46b-121 . . . ." (Emphasis added.) In those statutes, there is no indication that the legislature intended that the Juvenile Matters session would have a separate and distinct jurisdiction from that of the Superior Court.

Our review of the legislative history of § 51-164s similarly reveals that the goal of the legislature was "to combine the trial jurisdiction which is now spread

between the Superior Court, the Court of Common Pleas and the Juvenile Court into one Court . . . the Superior Court." 19 H.R. Proc., Pt. 7, 1976 Sess., p. 2862, remarks of Representative James T. Healey. This combination would result in the "more effective utilization of available manpower." Id., p. 2863. "Although the bill provides for divisions, it in no way inhibits or limits the jurisdictional power of each of the Judges, and, therefore, if he ran out of one particular grouping of business, he could then shift gears into another group." 19 H.R., Proc. Pt. 8, 1976 Sess., p. 3259, remarks of Representative Healey. Senator David H. Neiditz summarized the legislation by stating: "[T]he thrust of this bill, the reason for this bill, is to provide for the unification, simplification, flexibility and effective responsible control of the administration of the court of the State of Connecticut. . . . The main defect of the present system is the waste of judicial personnel . . . . This waste is caused by ill-defined jurisdictional lines causing duplication of efforts. Piecemeal handling of single controversies simultaneously in different courts compounds the problem." 19 S. Proc., Pt. 7, 1976 Sess., p. 2652, remarks of Senator Neiditz.

The court held that it lacked subject matter jurisdiction because the respondent was eighteen years old. We conclude, on the basis of our review of the case law, applicable statutes and legislative history, that subject matter jurisdiction over juvenile cases in the Superior Court for Juvenile Matters, however, is not separate and distinct from the general subject matter jurisdiction of the Superior Court. Thus, the Superior Court for Juvenile Matters clearly maintained subject matter jurisdiction over the eighteen year old respondent and her application for a temporary injunction.[6] Instead, the

---

[6] The parties also have briefed the issue of whether the court had inherent authority to enforce the settlement as a matter of law. See *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729 (1993). The respondent argues the terms of the agreement were clear and unambiguous, and, therefore, the court had the inherent

question of whether the Superior Court for Juvenile Matters was the proper forum was one of venue. See *State* v. *Kelley*, supra, 206 Conn. 332.

As we have stated, "[a] claim of improper venue may be waived by the parties, unlike subject matter jurisdiction, which cannot be conferred on the court by consent." *Neri* v. *Neri*, 35 Conn. App. 812, 817, 647 A.2d 1, cert. denied, 231 Conn. 916, 648 A.2d 154 (1994). In *State* v. *Orsini*, 187 Conn. 264, 269, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982), our Supreme Court stated that "[v]enue requirements are created for the convenience of the litigants and may be waived by failure to assert the statutory privilege in timely fashion." Venue simply concerns the location where the matter may be tried. *Haigh* v. *Haigh*, supra, 50 Conn. App. 465. Finally, we note that Practice Book § 10-32 provides in relevant part that "[a]ny claim of . . . improper venue . . . is waived if not raised by a motion to dismiss filed . . . within the time provided . . . ."

In the present case, the commissioner did not raise the issue of venue in her objection to the respondent's application for a temporary injunction. Thus, we deem waived any claim regarding improper venue.

II

The commissioner claims that the respondent's appeal should be dismissed on the ground of mootness. Specifically, the commissioner argues that (1) once the

authority to enforce the agreement. The commissioner claims that the terms of the agreement are not clear and unambiguous, and the parties dispute the terms of the settlement; therefore, the rule set forth in *Audubon Parking Associates, Ltd. Partnership* did not apply. Because we have concluded that the court retained subject matter jurisdiction, we need not address that issue.

The commissioner also argues that the respondent was voluntarily admitted to the care of the commissioner and that such cases fall within the jurisdiction of the Probate Court. The record, however, reveals that the respondent was not entered into a voluntary services program, but accepted certain conditions in exchange for the commissioner's guarantee to place

respondent became eighteen years old, the juvenile case became moot and (2) the respondent presently is in a suitable placement. We are not persuaded.

"Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . Since mootness implicates subject matter jurisdiction . . . it can be raised at any stage of the proceedings. . . . A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists. . . . An issue is moot when the court can no longer grant any practical relief." (Internal quotation marks omitted.) *Taylor* v. *Zoning Board of Appeals*, 71 Conn. App. 43, 46, 800 A.2d 641 (2002).

"The test for determining mootness of an appeal is whether there is any practical relief this court can grant the appellant. . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . If no practical relief can be afforded to the parties, the appeal must be dismissed." (Internal quotation marks omitted.) Id. "An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Schiavone* v. *Snyder*, 73 Conn. App. 712, 716, 812 A.2d 26 (2002).

A

The commissioner first claims that the present case is moot as a result of the respondent's age. Specifically,

the respondent in a clinically appropriate program. The commissioner's argument, therefore, is without merit.

the commissioner argues that the court's subject matter jurisdiction was lost or divested once the respondent became eighteen years old. We are not persuaded.

At the outset, we note that our Supreme Court has stated that "[a]s a general rule, jurisdiction once acquired is not lost or divested by subsequent events." (Internal quotation marks omitted.) *Loulis* v. *Parrott*, 241 Conn. 180, 198, 695 A.2d 1040 (1997), overruled in part on other grounds, *Munroe* v. *Zoning Board of Appeals*, 261 Conn. 263, 272, 802 A.2d 55 (2002); *Bailey* v. *Mars*, 138 Conn. 593, 601, 87 A.2d 388 (1952); *State* v. *One 1976 Chevrolet Van*, 19 Conn. App. 195, 199, 562 A.2d 62 (1989). An exception to that rule, however, is that subsequent events that render a case moot will result in the loss of subject matter jurisdiction. *Loulis* v. *Parrott*, supra, 198 n.11.

The commissioner relies on *In re Elisabeth H.*, 45 Conn. App. 508, 696 A.2d 1291, cert. denied, 243 Conn. 903, 701 A.2d 328 (1997), cert. denied, 523 U.S. 1137, 118 S. Ct. 1840, 140 L. Ed. 2d 1091 (1998), for its argument that the case is moot. The holding of *In re Elisabeth H.* is readily distinguishable. In that case, the respondent parents appealed from the judgment adjudicating their two minor daughters neglected, uncared for and abused. Id., 509. During the pendency of the appeal, one daughter reached the age of majority. Id. Six days after this court heard oral argument, the second daughter reached the age of majority. Id. We held that the case was moot because "the minors . . . have reached their majority and no order of this court can affect them . . . ." Id., 510.

As we discussed in part I, the Superior Court is a court of general jurisdiction. The Juvenile Matters docket is a division of the Superior Court and has the same jurisdiction as that of any other division of the Superior Court. An order of that court still can reach the commis-

sioner, unlike the situation of the respondent parents in *In re Elisabeth H.* The court may still provide practical relief due to the agreement between the parties. The mere fact that the respondent became eighteen years old does not render the case moot, nor does it somehow divest the court of jurisdiction. We conclude, therefore, that the commissioner's argument is without merit.

## B

The commissioner next claims that the respondent presently is in a clinically appropriate placement that meets the conditions of the oral agreement between the parties and that this court cannot, therefore, grant any practical relief.[7] The respondent concedes that she currently is in a placement and is receiving treatment, but argues that such treatment does not satisfy the terms of the agreement. She further claims that even if she currently is in an acceptable placement, if such placement becomes unsuitable, there is no guarantee that the commissioner will provide for, or arrange for, another clinically appropriate program, which was one of the terms of the agreement. Finally, the respondent claims that even if the present case is moot, we should review the case under the "capable of repetition, yet evading review" exception. See *Loisel* v. *Rowe*, 233 Conn. 370, 385, 660 A.2d 323 (1995). We agree with the respondent that the present case is not moot.

At the outset, we note that the parties disagree as to whether the respondent is receiving appropriate treatment at her present placement. On the basis of the record before us, we cannot definitively conclude that the respondent is receiving clinically appropriate treatment. Thus, we cannot say the issue is moot. Moreover, the agreement reached by the parties provided that if the department of public health is unable or unwilling

---

[7] That claim was not raised in the parties' briefs, but was discussed at oral argument.

to provide an appropriate treatment, then the commissioner will provide or arrange for such treatment as long as the respondent accepts the commissioner's requirements for voluntary services. Essentially, the respondent is guaranteed placement in an appropriate program by the commissioner if she complies with the commissioner's requirements. The present circumstances do not provide any such guarantee. By remanding the matter for further proceedings, which could include the granting of a temporary injunction, which would require the commissioner, and not the department of public health, to provide the respondent with an appropriate placement, we conclude that this court could grant practical relief, and, accordingly, the issue is not moot.[8]

The judgment dismissing the application for a temporary injunction for lack of subject matter jurisdiction is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

[8] Because we have determined that the issue is not moot, we need not reach the respondent's argument that the present case falls within the "capable of repetition, yet evading review" exception to the mootness doctrine.