## STATE OF CONNECTICUT *v.* DAVID A. FERNANDES, JR.
### (SC 18449)

Rogers, C. J., and Norcott, Katz, Palmer, Eveleigh and Vertefeuille, Js.

Argued October 25, 2010—officially released January 5, 2011*

*James M. Ralls,* senior assistant state's attorney, with whom, on the brief, were, *Michael Regan,* state's attorney, and *David J. Smith,* senior assistant state's attorney, for the appellant (state).

*Ralph U. Bergman,* for the appellee (defendant).

*Marsha L. Levick* filed a brief for the Center for Children's Advocacy et al. as amici curiae.

---

* January 5, 2011, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Christine Perra Rapillo* and *D. Keith Foren* filed a brief for the office of the chief public defender as amicus curiae.

*Opinion*

KATZ, J. The state appeals, following our grant of its petition for certification, from the judgment of the Appellate Court reversing the trial court's judgment, rendered after a jury trial, convicting the defendant, David A. Fernandes, Jr., of one count of assault in the second degree as an accessory, a class D felony, in violation of General Statutes §§ 53a-8 (a)[1] and 53a-60 (a) (1)[2] following the transfer of his case from the juvenile docket to the regular criminal docket of the Superior Court (criminal court)[3] pursuant to General Statutes

[1] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[2] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person . . . ."

[3] "This state has a unified court system. Thus, all criminal and civil matters, including juvenile matters, fall within the subject matter jurisdiction of the Superior Court. Juvenile matters are comprised of a civil session and a criminal session; all proceedings concerning delinquent children are heard in the criminal session for juvenile matters. General Statutes § 46b-121 (a). For ease of reference, we refer to the Superior Court for juvenile matters as juvenile court and to the Superior Court for regular, or adult, criminal matters as criminal court." *State* v. *Ledbetter*, 263 Conn. 1, 4–5 n.9, 818 A.2d 1 (2003). We further note that, because of this unified system, "[r]ather than implicating subject matter jurisdiction, issues relating to transfers between the juvenile and the regular criminal docket involve considerations that are analogous to those of the law of venue." *State* v. *Kelley*, 206 Conn. 323, 332, 537 A.2d 483 (1988); accord *In re Matthew F.*, 297 Conn. 673, 691, 4 A.3d 248 (2010). "We refer to the concept of the rights that arise upon the commitment of a case to the juvenile docket in terms of jurisdiction vesting in the juvenile court for the sake of convenience . . . . This should not be viewed, however, in any way as a retreat from our conclusion or rationale in *Kelley*." *State* v. *Angel C.*, 245 Conn. 93, 108 n.17, 715 A.2d 642 (1998). Accordingly, to the extent that the defendant's arguments are predicated on a change in jurisdiction upon transfer, there is no basis for such a claim.

(Rev. to 2005) § 46b-127 (b).[4] The issue in this certified appeal is whether the failure to provide a hearing in the

[4] General Statutes (Rev. to 2005) § 46b-127 provides: "(a) The court shall automatically transfer from the docket for juvenile matters to the regular criminal docket of the Superior Court the case of any child charged with the commission of a capital felony, a class A or class B felony or a violation of section 53a-54d, provided such offense was committed after such child attained the age of fourteen years and counsel has been appointed for such child if such child is indigent. Such counsel may appear with the child but shall not be permitted to make any argument or file any motion in opposition to the transfer. The child shall be arraigned in the regular criminal docket of the Superior Court at the next court date following such transfer, provided any proceedings held prior to the finalization of such transfer shall be private and shall be conducted in such parts of the courthouse or the building wherein court is located as shall be separate and apart from the other parts of the court which are then being held for proceedings pertaining to adults charged with crimes. The file of any case so transferred shall remain sealed until the end of the tenth working day following such arraignment unless the state's attorney has filed a motion pursuant to this subsection, in which case such file shall remain sealed until the court makes a decision on the motion. A state's attorney may, not later than ten working days after such arraignment, file a motion to transfer the case of any child charged with the commission of a class B felony or a violation of subdivision (2) of subsection (a) of section 53a-70 to the docket for juvenile matters for proceedings in accordance with the provisions of this chapter. The court sitting for the regular criminal docket shall, after hearing and not later than ten working days after the filing of such motion, decide such motion.

"(b) Upon motion of a juvenile prosecutor and order of the court, the case of any child charged with the commission of a class C or D felony or an unclassified felony shall be transferred from the docket for juvenile matters to the regular criminal docket of the Superior Court, provided such offense was committed after such child attained the age of fourteen years and the court finds ex parte that there is probable cause to believe the child has committed the act for which he is charged. The file of any case so transferred shall remain sealed until such time as the court sitting for the regular criminal docket accepts such transfer. The court sitting for the regular criminal docket may return any such case to the docket for juvenile matters not later than ten working days after the date of the transfer for proceedings in accordance with the provisions of this chapter. The child shall be arraigned in the regular criminal docket of the Superior Court by the next court date following such transfer, provided any proceedings held prior to the finalization of such transfer shall be private and shall be conducted in such parts of the courthouse or the building wherein court is located as shall be separate and apart from the other parts of the court which are then being held for proceedings pertaining to adults charged with crimes.

"(c) Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age. Such child

juvenile court to afford the defendant an opportunity to contest his transfer violated the requirements of § 46b-127 (b) and due process.[5] Because we agree with the state that the absence of a hearing in juvenile court did not violate statutory and due process requirements, we reverse the judgment of the Appellate Court.

The Appellate Court opinion recites the following facts and procedural history pertinent to the state's appeal. "On September 12, 2005, the defendant was

shall receive credit against any sentence imposed for time served in a juvenile facility prior to the effectuation of the transfer. A child who has been transferred may enter a guilty plea to a lesser offense if the court finds that such plea is made knowingly and voluntarily. Any child transferred to the regular criminal docket who pleads guilty to a lesser offense shall not resume his status as a juvenile regarding said offense. If the action is dismissed or nolled or if such child is found not guilty of the charge for which he was transferred or of any lesser included offenses, the child shall resume his status as a juvenile until he attains the age of sixteen years.

"(d) Any child transferred to the regular criminal docket of the Superior Court who is detained shall be in the custody of the Commissioner of Correction upon the finalization of such transfer. A transfer shall be final (1) upon the expiration of ten working days after the arraignment if no motion has been filed by the state's attorney pursuant to subsection (a) of this section or, if such motion has been filed, upon the decision of the court to deny such motion, or (2) upon the court accepting the transfer pursuant to subsection (b) of this section. Any child returned to the docket for juvenile matters who is detained shall be in the custody of the Judicial Department.

"(e) The transfer of a child to a Department of Correction facility shall be limited to the provisions of subsection (d) of this section and said subsection shall not be construed to permit the transfer of or otherwise reduce or eliminate any other population of juveniles in detention or confinement within the Judicial Department or the Department of Children and Families."

Unless otherwise indicated, all references herein to § 46b-127 are to the 2005 revision.

[5] This court granted certification on the following issue: "Did the Appellate Court properly conclude that the transfer of the [defendant's] case from the juvenile docket to the regular docket of the Superior Court did not comply with the applicable statute and with due process requirements?" *State* v. *Fernandes*, 293 Conn. 917, 979 A.2d 491 (2009). As we explain later in this opinion, the Appellate Court's holding, as well as the defendant's claims on appeal, are limited to the proceedings before the juvenile court and do not extend to those before the criminal court. Because the certified question is stated more broadly than the appeal demands, we reframe it consistently with the issue before us. See *State* v. *Ouellette*, 295 Conn. 173, 183–85, 989 A.2d 1048 (2010).

issued a juvenile summons and complaint/promise to appear on a charge of conspiracy to commit assault in the second degree in violation of General Statutes §§ 53a-48[6] and 53a-60. The charge stemmed from an incident at the defendant's school on September 1, 2005. The defendant's date of birth is April 4, 1990, making him fifteen years old at the time of the incident. The defendant appeared in [j]uvenile [c]ourt on September 16, 2005, with counsel, and probable cause for the charge was found. On the defendant's November 11, 2005 appearance in [j]uvenile [c]ourt, the case was transferred to the criminal docket pursuant to . . . § 46b-127 (b). [No hearing was held in juvenile court to consider the propriety of the defendant's transfer.][7]

"The state, by substitute information, charged the defendant additionally with assault in the second degree as an accessory in violation of . . . §§ 53a-8 and 53a-60 (a) (1). The defendant's jury trial [as an adult] commenced in April, 2007. The jury found the defendant guilty of assault in the second degree as an accessory, and found him not guilty of conspiracy to commit assault in the second degree. On June 1, 2007, the court sentenced the defendant to a total effective term of three years incarceration, execution suspended after one year, with three years [of] probation." *State* v. *Fernandes*, 115 Conn. App. 180, 182–83, 971 A.2d 846 (2009).

---

[6] General Statutes § 53a-48 provides: "(a) A person shall be guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"(b) It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[7] There is nothing in the record to indicate whether any hearing was held in criminal court, or whether the defendant's counsel requested such a hearing.

The defendant subsequently appealed from the judgment of conviction to the Appellate Court. The Appellate Court reversed the defendant's conviction and remanded the case for unspecified further proceedings, concluding that "[d]ue process and § 46b-127 (b) require that the defendant be afforded a hearing in which the [j]uvenile [c]ourt judge considers argument from counsel as to whether a case should be transferred to adult criminal court." Id., 188. This certified appeal followed.

On appeal, the state claims that there is no statutory or constitutional right to a hearing in the juvenile court to challenge whether to transfer a juvenile to criminal court, and that due process concerns are satisfied by procedures in the criminal court. Specifically, the state claims that the statute does not provide for any hearing, and that due process would require a hearing with respect to only those matters on which § 46b-127 (b) requires a court to make discretionary determinations. The state opines that, because the statute vests the juvenile court with authority to determine only whether the statutory predicates to transfer are satisfied—age, the offense charged, and probable cause—the defendant could have a due process right to a hearing regarding *those* determinations, but clearly would not have a right to a hearing to challenge the transfer if those statutory predicates were satisfied because the statute does not vest the juvenile court with any discretion to make such a determination.[8] Conversely, the state

---

[8] This position, which the state advanced at oral argument in this court, constitutes a departure from the one taken in its brief, wherein the state had claimed that due process did not require *any* hearing in the juvenile court. We note that the state's position as to whether due process demands a hearing on the statutory predicates to initiation of the transfer process is neither an issue that we must resolve on appeal nor an issue on which such a "concession" can bind this court. It is the province of the court, not the parties through concessions, to determine what the constitution requires. Moreover, insofar as the state's position concerned a *constitutionally* required hearing, rather than a *statutorily* required one, we are puzzled by the dissent's reliance on the state's position as a starting point for the dissent's statutory interpretation.

contends that, because § 46b-127 (b) does vest the criminal court with discretion to decide whether to retain or return a transferred juvenile file, a juvenile would be entitled to a due process right to a hearing before that court, and that a hearing addressing the appropriateness of such a transfer in juvenile court would be duplicative. In response, the defendant claims that he had a vested due process right to his juvenile status, and that he was deprived of that right without due process of law when he was denied the opportunity for a pretransfer hearing in juvenile court. Significantly, the defendant claims that only a pretransfer hearing in the juvenile court would satisfy due process. Indeed, he has expressly disavowed any claims regarding the proceedings before the criminal court. See footnote 19 of this opinion.

We conclude that § 46b-127 (b) does not entitle the defendant to a hearing in the juvenile court prior to the initiation of a transfer to contest the appropriateness of trying the juvenile as an adult. Nevertheless, we conclude that § 46b-127 (b) vests a juvenile potentially subject to transfer under that provision with a juvenile status that gives rise to a liberty interest. Accordingly, in keeping with the legislative directive vesting sole discretion over the transfer in the criminal court, we conclude that due process entitles such a juvenile to a hearing in criminal court prior to the finalization of his transfer. Therefore, the Appellate Court's judgment predicated on a statutory and due process right to a hearing in the juvenile court must be reversed.

Whether the Appellate Court properly concluded that the defendant's transfer did not comport with § 46b-127 (b) and with the requirements of due process is a question of law, over which we exercise plenary review. *Ziotas* v. *Reardon Law Firm, P.C.*, 296 Conn. 579, 587, 997 A.2d 453 (2010). "Established wisdom counsels us to exercise self-restraint so as to eschew unnecessary

determinations of constitutional questions." (Internal quotation marks omitted.) *State* v. *Lemon*, 248 Conn. 652, 663 n.15, 731 A.2d 271 (1999). Accordingly, we turn first to the question of whether § 46b-127 (b) required that the defendant have a hearing in the juvenile court prior to his transfer to the criminal court.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 197, 3 A.3d 56 (2010).

As instructed by § 1-2z, we begin with the text of the statute itself. General Statutes (Rev. to 2005) § 46b-127 (b) provides in relevant part: "Upon motion of a juvenile prosecutor and order of the court, the case of any child charged with the commission of a class C or D felony or an unclassified felony shall be transferred from the docket for juvenile matters to the regular criminal docket of the Superior Court, provided such offense was committed after such child attained the age of fourteen years and the court finds ex parte that there is probable cause to believe the child has committed the act for which he is charged. . . . The court sitting for the regular criminal docket may return any such case to the docket for juvenile matters not later than ten working days after the date of the transfer for proceedings in accordance with the provisions of this chapter. . . ."

Section 46b-127 (b) then establishes certain procedures to be followed before the court sitting for the

regular criminal docket accepts and finalizes such a transfer. Specifically, "[t]he file of any case so transferred shall remain sealed until such time as the court sitting for the regular criminal docket accepts such transfer. . . . The child shall be arraigned in the regular criminal docket of the Superior Court by the next court date following such transfer, provided any proceedings held prior to the finalization of such transfer shall be private and shall be conducted in such parts of the courthouse or the building wherein court is located as shall be separate and apart from the other parts of the court which are then being held for proceedings pertaining to adults charged with crimes." General Statutes (Rev. to 2005) § 46b-127 (b).

It is self-evident that the statute makes no express reference to any hearing. Therefore, we examine its terms to determine whether such a hearing implicitly is required by the nature of the proceedings in the juvenile court. It is plain from the statute's text that transfer of a juvenile charged with a class C or class D felony is discretionary; the transfer takes place only "[u]pon motion of a juvenile prosecutor and order of the court"; General Statutes (Rev. to 2005) § 46b-127 (b); provided that the court has made a finding of probable cause. This finding of probable cause is not limited to cases subject to transfer, but any case in which a juvenile has been charged with a criminal offense. See General Statutes §§ 46b-128 (a) and 46b-133 (d); Practice Book §§ 29-1 and 29-1A. Properly framed, therefore, the first question we must resolve is whether, upon the discretionary motion of a prosecutor and the court's finding of probable cause, the juvenile court must issue the order described by § 46b-127 (b). If the court has no discretion as to whether to issue the transfer order, then there would be no basis upon which to infer that the statute would require a hearing.

Read in isolation, the portion of the statute that provides for these discretionary transfers does not answer this question. Although the provision lays out the requirements that must be satisfied before the order can be issued, the transfer itself is nevertheless conditioned upon that "order of the court . . . ." General Statutes (Rev. to 2005) § 46b-127 (b). As a result, this provision is susceptible to two competing interpretations: upon a finding of probable cause and a prosecutor's motion, the statute either *requires* the juvenile court to transfer the case, or vests the juvenile court with discretion to decide whether to transfer the case. Although the statute provides that a case "shall be transferred from the docket for juvenile matters to the regular criminal docket of the Superior Court"; General Statutes (Rev. to 2005) § 46b-127 (b); the presumptively mandatory language "shall"; see *Butts* v. *Bysiewicz*, 298 Conn. 665, 676, 5 A.3d 932 (2010); reasonably may refer to what happens to the case following an order, rather than create an obligatory duty on the juvenile court.

Viewing § 46b-127 (b) in its entirety, however, the text supports the conclusion that the statute does not contemplate a hearing before a juvenile judge *prior* to transfer. The statute provides that, following the transfer of a case, the criminal court "may" return the case to the juvenile docket, which indicates that the criminal court has discretion over whether to retain or return any given transferred case. General Statutes (Rev. to 2005) § 46b-127 (b). The discretionary term "may return" stands in sharp contrast to the "shall be transferred" language governing the initiation of the transfer in juvenile court. "[T]he use of the different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings . . . ." (Internal quotation marks omitted.) *Hasselt* v. *Lufthansa German Airlines*, 262

Conn. 416, 426, 815 A.2d 94 (2003). That the criminal court has discretion whether to retain the case is confirmed by the fact that, prior to the case being accepted on the regular docket, § 46b-127 (b) prescribes extensive protections to ensure the continued confidentiality and privacy of the transferred juvenile. If the criminal court did not have discretion to return the case to the juvenile docket, such protections would be unnecessary as they would cease automatically upon acceptance of the transfer. Indeed, the statute's references to the power to accept a transfer, and to the "finalization" of a transfer, further underscore the discretionary nature of the criminal court's decision as to the ultimate destination of a transferred case. See General Statutes (Rev. to 2005) § 46b-127 (b). Therefore, although the statute does not provide any guidelines or articulate standards for the criminal court to consider, it clearly contemplates a discretionary decision by that court whether to retain the case.

Additionally, the use of the discretionary term "may" in connection with the decision whether to return the case to the juvenile docket, when contrasted to the mandatory language governing the initiation of the transfer, suggests that the legislature did not intend for there to be a hearing prior to the juvenile court's transfer of a case. This conclusion is bolstered by the fact that an interpretation of § 46b-127 (b) requiring a pretransfer hearing before the juvenile court would vest discretion in a court that would be duplicative of the discretion exercised by the criminal court in deciding whether to retain or return any given transferred case before the adult court. As we previously have noted, such duplication in both juvenile and adult court regarding the same transferred case is unwarranted. See *In re Ralph M.*, 211 Conn. 289, 307, 559 A.2d 179 (1989) (concluding under earlier revision of § 46b-127 that duplicative probable cause hearings in juvenile court and criminal court

are "unwarranted"). In addition to this potential duplication, granting discretion to the juvenile court to deny a transfer would give rise to the possible scenario wherein a criminal court, in its discretion, returned a transferred case to a juvenile court that, in its discretion, had approved that same transfer. We read the statute in a manner so as to avoid the possibility of such contradictory rulings. Therefore, it would appear that the "order of the court" language in § 46b-127 (b) simply refers to the juvenile court's ministerial act of directing the transfer after making the requisite probable cause finding.[9]

In considering the question before us, however, § 1-2z also directs us to consider related provisions. As the Appellate Court properly noted, the juvenile transfer statute distinguishes between the treatment of a child charged with the most serious offenses (capital felony, class A or class B felonies), and less serious felonies (class C, class D or unclassified felonies), respectively; General Statutes (Rev. to 2005) § 46b-127 (a) and (b). "[S]ubsection (a) expressly declares that the transfer is automatic and that counsel for the child shall not be permitted to make any argument or file any motion in opposition to the transfer. . . . No equivalent [prohibitory] language exists in subsection (b). Instead, subsection (b) provides that the case shall be transferred only [u]pon motion of a juvenile prosecutor and order of the court." (Citation omitted; internal quotation marks omitted.) *State* v. *Fernandes*, supra, 115 Conn. App. 186–87. We conclude that, although the text of § 46b-127 (b) expressly requires only the juvenile court to consider whether there is probable cause that the child

---

[9] In light of the statutory predicates to transfer, such a determination necessarily would require the juvenile court to consider not only whether the state has alleged sufficient facts to support a finding of probable cause that the juvenile committed the crime charged, but also whether the statutory criteria relating to age and the type of felony are satisfied.

has committed the class C or class D felony charged, the omission of a bar to argument prior to transfer similar to that in cases dealing with class A or class B felonies raises an ambiguity as to whether § 46b-127 (b) contemplates an opportunity for such argument at a pretransfer hearing before the juvenile court. Accordingly, as instructed by § 1-2z, we turn to extratextual sources to aid in our interpretation of the statute.

The genealogy and legislative history of § 46b-127 (b) establishes beyond any doubt that the legislature did not intend for defendants to receive a hearing in the juvenile court prior to transfers pursuant to that section. Prior to 1995, § 46b-127 provided for the transfer of only those juveniles charged with the most serious felony offenses. The pre-1995 statute set forth express and comprehensive hearing procedures—both mandatory and discretionary—in the juvenile court prior to transfer. General Statutes (Rev. to 1993) § 46b-127, as amended by Public Acts, Spec. Sess., July, 1994, No. 94-2, § 6.[10] Specifically, the statute mandated a probable

[10] After specifying in subsection (a) the offenses for which a juvenile may be transferred, General Statutes (Rev. to 1993) § 46b-127, as amended by Public Acts, Spec. Sess., July, 1994, No. 94-2, § 6, provides in relevant part: "(a) . . . Not later than ten days after the filing of a motion to transfer a child to the regular criminal docket under subdivision (2) of this subsection, the child may file a notice of intent to request a hearing under subsection (c) of this section.

"(b) No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged. At such hearing, the child shall have the right to counsel and to confront witnesses against him. The procedures provided in section 54-46a shall apply at such hearing, except that the child shall have the right to move to suppress any admission made by him on the ground that it was obtained in violation of the provisions of subsection (a) of section 46b-137 and to obtain discovery of exculpatory evidence.

"(c) If the court makes a finding of probable cause, any child referred pursuant to subdivision (2) of subsection (a) of this section may request an immediate hearing at which he shall have the right to present evidence that he should not be transferred to the regular criminal docket because (1) he is a person with mental retardation, as defined in section 1-1g, or (2) he suffers from a substantial mental disorder, as defined in section 17a-75

cause hearing, and further provided that, if the juvenile court found probable cause, the juvenile could request a hearing to oppose transfer on specified statutory grounds. In addition, the juvenile transfer statute expressly established the juvenile's right to counsel at the hearings, the scope of what evidence may be considered at the hearings, the juvenile's right to discovery of exculpatory evidence, and the burden of proof to be satisfied at the hearings. In short, prior to 1995, § 46b-127 set forth in great detail the hearings to which a juvenile was statutorily entitled in juvenile court prior to transfer—in fact, the provision referred to a "hearing" six times. See General Statutes (Rev. to 1993) § 46b-127, as amended by Public Acts, Spec. Sess., July, 1994, No. 94-2, § 6.

In 1995, the legislature replaced this scheme with one that substantively mirrors the current statute, expanding the potential scope of transfers to juveniles charged with any felony. Tellingly, the new scheme omitted any mention of hearings, as well as standards that would have guided the juvenile court at such hearings. These omissions, considered in light of the extensive provisions of the prior scheme, strongly indicate the legislature's intent not to provide any such hearings under the new statutory scheme.[11] This conclusion is

or (3) an alternative plan or placement within the juvenile justice system has been arranged that will protect the community from further criminal conduct by the child. If the court, after such hearing, finds that a factor specified in subdivision (1), (2) or (3) of this subsection has been proven by a preponderance of the evidence, it shall not transfer such child to the regular criminal docket. . . ."

[11] We note that the statute as amended in 1995 required transfer "[u]pon motion of a juvenile prosecutor and *approval* by the court"; (emphasis added) Public Acts 1995, No. 95-225, § 13; whereas the current statute requires transfer upon such motion and "order" of the court. General Statutes § 46b-127 (b). This language was amended in 1998; see Public Acts 1998, No. 98-256, § 3; and nothing in the brief reference to this change in legislative debates reflects any intention to make a substantive change to the statute. See 41 H.R. Proc., Pt. 15, 1998 Sess., pp. 5188–89, remarks of Representative Michael P. Lawlor. Indeed, had the legislature intended to clarify that the juvenile court *is* vested with discretion to decide whether it is appropriate

further borne out by comments during the debate over the new scheme.

To put these comments in context, it is useful to understand that the 1995 amendment mandated the transfer of class A, class B and capital felonies, but permitted the prosecutor thereafter to file a motion to transfer the case of any child charged with the commission of a class B felony back to the juvenile court. Public Acts 1995, No. 95-225, § 13 (P.A. 95-225). As we previously have noted, with respect to class C and class D felonies, the prosecutor makes that decision prior to the transfer.

to try the juvenile as an adult, it would have employed language that more clearly reflected such an intent, rather than using a term that appears to indicate a less active role for that court.

The dissent vehemently argues that we have failed to give due weight to the legislature's rejection of two proposed amendments that would have mandated transfer of class C and D felonies ("shall transfer") upon the prosecutor's motion and its adoption instead of the aforementioned language providing that the court shall transfer upon such motion and *approval* by the court. See Substitute House Bill No. 7025, 1995 Sess., proposed Senate Amendment A and House Amendment B; see also Bill Status Report for Substitute House Bill No. 7025. We are mindful of the rejected amendments, but wholly disagree with the conclusion drawn by the dissent as to the impetus for the changes. First, we note the difference between these amendments and the bill as adopted was not simply the substitution of the language highlighted by the dissent. Rather, the rejected amendments did not require a finding of probable cause prior to the transfer. Therefore, we conclude that it is more logical to read the change on which the dissent relies in connection with the addition of the probable cause finding, such that the juvenile court's "approval" simply reflects that the court must find this statutory predicate to transfer to have been satisfied. Second, and perhaps more significantly, the rejected amendments also would have eliminated both the confidentiality protections in place prior to the criminal court's acceptance of a transfer and the criminal court's discretion to return a transferred case to the juvenile court. Our review of the legislative history reveals no evidence as to which of these changes motivated the legislative rejection of these amendments. Accordingly, the legislature could have rejected these amendments for any of several reasons. Cf. *Ricigliano* v. *Ideal Forging Corp.*, 280 Conn. 723, 741–43, 912 A.2d 462 (2006) (declining to ascribe particular legislative intent to rejection of amendment that would have made other changes in addition to one on which party relied).

In the House of Representatives, a sponsor of P.A. 95-225, Representative Michael P. Lawlor explained that, under the Public Act, "when a prosecutor makes a motion to transfer any felony to the adult court, that transfer will take place automatically . . . assuming the prosecutor makes the motion, there's probable cause found in the ex parte hearing and the judge orders the transfer. There's no mandatory hearing that needs to take place, other than that." 38 H.R. Proc., Pt. 8, 1995 Sess., p. 2936. Further clarifying the bill, Representative Lawlor later added that the bill was designed to "give the maximum discretion to the prosecutors that whenever they want to send any felony, not just the [c]lass A or [c]lass B felony, but any felony to the adult court, that transfer is automatic. In other words, there's no procedural steps between the decision to transfer and the transfer." Id., p. 2953. In response to a question, Representative Lawlor explained the distinction between capital and class A felonies, as opposed to all other types of felonies, under the bill: "For a [c]lass A felony or a capital felony, [transfer is] not only automatic, but it's mandatory. The automatic [transfer] would apply to all other felonies." Id., p. 2958. These statements clearly demonstrate a legislative intent that transfers for all felonies occur *automatically*, but, in the case of class C and class D felonies, are subject first to a motion by the prosecutor and the requisite findings. Representative Lawlor's statements summarizing the bill are particularly instructive, as they would have formed the basis for most representatives' understandings of the bill.[12]

[12] The Appellate Court relied on comments by one legislator who was not a sponsor of the bill without apparently considering or giving due effect to the responses to those statements and earlier statements by the bill's sponsor, Representative Lawlor. See *State* v. *Fernandes*, supra, 115 Conn. App. 187. In our view, this particular exchange is ambiguous, and is particularly unclear as to whether the procedures at issue concerned the juvenile court or the criminal court. In light of Representative Lawlor's clear statements prior to this exchange that are cited in the text of this opinion, we do not find this exchange informative.

The following exchanges reflect the comments upon which the Appellate Court relied, along with Representative Lawlor's responses:

We note that the 1995 amendment did not include the proviso in § 46b-127 (a) expressly prohibiting argument in opposition to a transfer under § 46b-127 (a). That language was added in 1997; see Public Acts 1997, No. 97-319, § 21; and there is no relevant legislative history. In light of the fact that the pre-1995 statute, which provided for transfer of only specific serious felonies, expressly provided detailed hearing procedures to challenge that transfer, it appears that the legislature in 1997 simply intended to make express its intent to eliminate the previously existing procedural protections. Its decision not to preclude expressly in § 46b-127 (b) argument in opposition to transfer could mean either that the legislature deemed it unnecessary to address protections that never existed for class C

"[Representative Dale W. Radcliffe]: . . . Can an individual at that stage in the Superior Court seek a hearing in probable cause and does the court have the ability to grant such a hearing? . . .

"[Representative Lawlor]: . . . I suppose, as is often the case in any criminal proceeding, you can make whatever request you want, the statute would not provide for that, however.

"[Representative Radcliffe]: So then a judge . . . in carrying out this statute might determine that a hearing was appropriate and might decline to automatically transfer or transfer, even on a finding of probable cause based on the four corners of an affidavit. . . .

"[Representative Lawlor]: . . . [Y]es, that's true. All right." 38 H.R. Proc., supra, pp. 2961–62.

The following exchange between the legislators later ensued:

"[Representative Radcliffe]: . . . I do think we have an amendment here, however, that allows a judge, ex parte, on the basis of the affidavits to find probable cause and then still does not require that judge to approve the transfer, is that correct? . . .

"[Representative Lawlor]: . . . Yes, that's correct, but I would point out that in the bill with reference to the remarks that were just made a moment ago, we are changing this to be a criminal court. In fact, this will be a criminal session of the Superior Court, if this bill passes and, therefore, not some sort of special juvenile proceeding." Id., p. 2966.

To the extent that the dissent also relied on comments made during debate by Representative F. Philip Prelli as refuting our interpretation of Representative Lawlor's comments, we decline to give greater weight to the former's comments, as, like Representative Radcliffe, Representative Prelli was not a sponsor of the bill and simply restated the statutory language providing that the court "approve" the transfer without shedding any light on that term's meaning. See id., p. 2954, remarks of Representative Prelli.

and D felonies or that the legislature intended to leave open the possibility that the juvenile's counsel could oppose the transfer once it was under consideration by the criminal court. Accordingly, we conclude that § 46b-127 (b) does not require the juvenile court to conduct a hearing to allow the child's counsel an opportunity to argue against transfer.

Because the Appellate Court concluded, and the defendant claims, that due process also required a hearing before the juvenile court prior to the defendant's transfer, our conclusion that there is no statutory requirement of a hearing under § 46b-127 (b) does not, by itself, resolve the present case. The requirements to prevail on a due process claim are well established. "The fourteenth amendment to the United States constitution provides that the [s]tate [shall not] deprive any person of life, liberty, or property, without due process of law . . . . In order to prevail on his due process claim, the [defendant] must prove that: (1) he has been deprived of a property [or *liberty*] *interest cognizable under the due process clause;* and (2) the deprivation of the property [or liberty] interest has occurred without due process of law." (Emphasis in original; internal quotation marks omitted.) *State* v. *Angel C.*, 245 Conn. 93, 104, 715 A.2d 652 (1998). In order to prevail on his due process claim, therefore, the defendant must first demonstrate that he has an interest in not being subjected to transfer under § 46b-127 (b) that is cognizable under the due process clause.

"Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." (Internal quotation marks omitted.) *State* v. *Matos*, 240 Conn. 743, 749, 694 A.2d 775 (1997). The defendant claims that he has a liberty interest emanating from the statutory

scheme governing the treatment of juveniles charged with crimes.[13] We agree.

"[O]nce a state provides its citizens with certain statutory rights beyond those secured by the constitution itself, the constitution forbids the state from depriving individuals of those statutory rights without due process of law." (Internal quotation marks omitted.) Id. The state, by statute, has vested juveniles charged with class C and class D felonies with certain rights beyond those guaranteed by the constitution. There is no question that "adjudication as a juvenile rather than prosecution as an adult carries significant benefits, chief among which are a determination of delinquency rather than criminality; General Statutes § 46b-121; confidentiality; General Statutes § 46b-124; limitations with respect to sentencing; General Statutes § 46b-140; erasure of files; General Statutes § 46b-146; and isolation from the adult criminal population. General Statutes § 46b-133 . . . ." (Citation omitted.) *State* v. *Angel C.*, supra, 245 Conn. 103. These benefits, among others, were the focus of the United States Supreme Court in *Kent* v. *United States*, 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966), which we have interpreted as holding "that if a statute vests a juvenile with the right to juvenile status, then that right constitutes a liberty interest, of which the juvenile may not be deprived without due process, i.e., notice and a hearing."[14] *State* v. *Angel C.*, supra, 106.

[13] In keeping with our decision in *State* v. *Angel C.*, supra, 245 Conn. 104, the defendant does not contend that any liberty interest emanates from the state or federal constitutions.

[14] The benefits to an individual of juvenile status were also the focus of the amici in this case. In addition to underscoring the importance of juvenile status, the amici also urge us to provide juveniles with an opportunity to present their case for retaining juvenile status before they are stripped of its benefits. Neither amicus suggests, however, that such an opportunity, so long as it is available before the loss of juvenile status, is in any way less valuable as a protection of the critical rights of a juvenile if it is provided before the criminal court, rather than before the juvenile court.

The statutory scheme at issue in *Kent* operated similarly to the one at issue in the present case. That scheme provided that the juvenile court would have jurisdiction over the juveniles encompassed by the scheme, but "may, after full investigation, waive jurisdiction [over a child charged with a felony offense] and order such child held for trial [in adult criminal court]"; (internal quotation marks omitted) *Kent* v. *United States*, supra, 383 U.S. 547–48; but did not state any standards to govern the decision and did not provide for participation by the child or his counsel in that decision.[15] As we previously have indicated in our analysis of the statute, § 46b-127 (b) implicitly indicates that the criminal court will conduct an evaluation to determine whether to accept the transfer, but does not specify a standard by which to make that decision or the rights of the child or his representative to present argument to the court as to that matter. We do not find it significant that, under our scheme, the criminal court makes this evaluation instead of the juvenile court, because, as we previously have noted, our scheme requires that the protections that otherwise would be available to a juvenile remain in place until this evaluation is made.

In *Kent*, the facts differed in one important respect. There, the child's counsel had filed motions in the juvenile court seeking to obtain access to the information that had been accumulated by the court staff during the child's probation period and that would be available to the court in considering whether it should retain or waive jurisdiction. Id., 546. The child's counsel had "represented that access to this file was essential to his providing [the child] with effective assistance of counsel. The [j]uvenile [c]ourt [j]udge did not rule on

---

[15] The scheme at issue in *Kent*, however, did not expressly provide for assistance of counsel in relation to these transfer proceedings. Under our scheme, such protection expressly is provided. See General Statutes § 46b-123e (b).

these motions. He held no hearing [regarding the waiver of jurisdiction]." Id.

The United States Supreme Court noted that "[i]t is implicit in [the juvenile court] scheme that non-criminal treatment is to be the rule—and the adult criminal treatment, the exception which must be governed by the particular factors of individual cases." (Internal quotation marks omitted.) Id., 560–61. The court held: "There is no justification for the failure of the [j]uvenile [c]ourt to rule on the motion for [a] hearing filed by [the] petitioner's counsel, and it was error to fail to grant a hearing. We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment."[16] Id., 561–62.

The state nevertheless claims that the liberty interest in juvenile status does not vest in those juveniles subject to § 46b-127 (b). In support of this claim, the state points to our holding in *State* v. *Angel C.*, supra, 245 Conn. 93. In that case, in response to a similar challenge to the mandatory transfer provision of § 46b-127 (a), we concluded that due process does not require a hearing in juvenile court prior to transfer under that statute, because, in large part due to the mandatory nature of the transfer, the right to juvenile status does not vest in juveniles transferred under the mandatory transfer provisions relating to juveniles charged with class A or

---

[16] The United States Supreme Court construed the statutory mandate of a "full investigation" and the concern of arbitrariness in the absence of standards for the waiver of jurisdiction to require the juvenile court to state its reasons for waiving jurisdiction. *Kent* v. *United States*, supra, 383 U.S. 561. Although our statute does not contain similar language, we assume that the criminal court will state its reasons for declining to transfer the case back to the juvenile court and that, in the absence of such stated reasons, counsel for a child seeking review of such a decision will seek an articulation.

class B felonies. Id., 106–108. The state claims that, pursuant to *Angel C.*, because the proceedings in the juvenile docket for individuals transferred under § 46b-127 (b) are, similarly to § 46b-127 (a), administrative and not subjected to "meaningful" judgment by the juvenile judge, the liberty interest in juvenile status does not vest in juveniles transferred under § 46b-127 (b).[17] We disagree.

Under the Connecticut scheme, unlike juveniles charged with class A or class B felonies, who automatically are transferred to adult court, a juvenile charged with a class C or class D felony is treated as a juvenile unless the prosecutor, in his discretion, moves for a transfer. The operation of § 46b-127 (b), like the scheme at issue in *Kent*, differs from § 46b-127 (a) in this one critical respect. The cases of juveniles charged under § 46b-127 (b) or under the *Kent* scheme begin in juvenile court and move out of juvenile court only in those instances in which an actor, *in his discretion,* chooses to transfer the case. This stands in sharp contrast to the mandatory transfer under § 46b-127 (a) of a juvenile charged with a class A or class B felony, who "has no right to avail himself of juvenile court jurisdiction because the statute *expressly precludes* the exercise of jurisdiction by the juvenile court . . . ." (Emphasis in original.) *State* v. *Angel C.*, supra, 245 Conn. 108. Recognizing that distinction, we held that "*Kent* cannot be expanded, therefore, beyond the scope of discretionary transfer statutes to mandatory transfer statutes"; id.; like § 46b-127 (a). In the case of discretionary transfer

---

[17] This claim fails to account for the fact, as admitted by the state, that until the criminal court exercises its discretion to accept a transferred juvenile case, the transferred individual retains all of the benefits of juvenile status. Accordingly, while the state is correct that the juvenile court itself performs a largely administrative role in § 46b-127 (b) transfers, significant discretion and judgment is exercised by the criminal court prior to the revocation of the juvenile status, further bolstering the conclusion that the right to that status is vested.

statutes, however, a juvenile does have a right to avail himself of juvenile court jurisdiction because his case is presumptively a juvenile case; while that right is alienable under § 46b-127 (b), it is nevertheless protected by due process. Therefore, when, as here, treatment as a juvenile is the presumptive norm, and treatment as an adult is the exception, the right to juvenile status vests in the juvenile, and the discretionary transfer to criminal court, which is a revocation of juvenile status, constitutes a deprivation of a liberty interest cognizable under the due process clause. Accordingly, we must determine whether, in this case, that deprivation has occurred without the due process of law.

Because juveniles who are charged with class C or class D felonies have a vested interest in that status, they are, accordingly, entitled to "notice and a hearing" before they can be deprived of that interest. *State* v. *Angel C.*, supra, 245 Conn. 106. The hearing to protect the due process right must be available prior to its deprivation. Because of the statutory protections in place prior to the acceptance of a transfer, juveniles do not lose any of the benefits of juvenile status until the criminal court accepts and finalizes a transfer under § 46b-127 (b); prior to the completion of that process, they remain juveniles. To adequately ensure due process, therefore, the hearing on the transfer must take place prior to the criminal court's acceptance of the juvenile's case, as only such a timely hearing would adequately protect the benefits of juvenile status that comprise the liberty interest. Section 46b-127 (b) does not expressly provide for such a hearing, although, as we have noted, it does vest discretion to accept or return a transfer in the criminal court.

In order to preserve the constitutionality of a statute, this court can implement a judicial gloss on that statute. See, e.g., *State* v. *Cook*, 287 Conn. 237, 242, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L.

Ed. 2d 328 (2008). In keeping with that authority, and consistent with what we perceive to be the legislature's intent, we clarify that, upon a transfer request by the prosecutor and a determination by the juvenile court that there is probable cause that the child committed the felony offense charged, under § 46b-127 (b), the child so charged is entitled to a hearing before the judge of the criminal court docket prior to that court's decision to accept and finalize the defendant's case on the criminal court docket. Such a defendant is not, however, entitled to a hearing before the juvenile court; the legislative intent behind this statute clearly establishes that once a motion for transfer is properly made and probable cause is found, the juvenile judge's obligation to order the transfer is ministerial.[18] This gloss is consistent with the text and legislative history of § 46b-127 (b), because, insofar as the statute vests the criminal court with discretion to accept or return a transfer, and has divested the juvenile court of any meaningful discretion in this area, we conclude that the criminal court is the most appropriate place for the hearing to occur. In the absence of any statutory guiding principles that the criminal court is to consider in reaching its decision whether to retain or return the case, we decline to articulate a list of such considerations here. Indeed, the Supreme Court in *Kent* v. *United States*, supra, 383 U.S. 560–61, simply determined that the juvenile was entitled to an individualized assessment; it did not state that any specific factors must be considered.

In the present case, however, we need not consider whether the defendant was properly afforded an opportunity for such a hearing in the criminal court. On appeal, the defendant expressly has waived any claims

---

[18] We note additionally that the state has acknowledged that the criminal court is vested with discretion to accept or return a transferred case, and has never claimed that a hearing would be inappropriate.

arising from the proceedings in that court.[19] Because the defendant has claimed only that he was entitled to a hearing in the juvenile court prior to the transfer of his case, and because we have determined that neither § 46b-127 (b) nor due process entitles him to a hearing in that forum, we conclude that his statutory and constitutional claims must fail.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion ROGERS, C. J., and NORCOTT and VERTEFEUILLE, Js., concurred.

EVELEIGH, J., with whom PALMER, J., joins, dissenting. I respectfully dissent. I disagree with the majority's conclusion that the Appellate Court improperly concluded that the failure to provide a hearing in the juvenile court on class C and D and unclassified felonies prior to the transfer of such cases to the regular criminal docket of the Superior Court, and to afford the defendant in the present case, who was fifteen years old at the time of the incident giving rise to his conviction, an opportunity to contest his transfer, violated the requirements of General Statutes (Rev. to 2005) § 46b-

---

[19] In the course of his submissions to this court, the defendant's counsel wrote a letter to the appellate clerk's office in which he stated: "[The defendant's] appeal *only* concerns the errors committed at [the November 11, 2005 juvenile court] hearing—the failure to hold a 'due process hearing' as is required by the interpretation of the United States constitution by the [United States] Supreme Court and the interpretation of the Connecticut [c]onstitution by the Supreme Court of Connecticut.

"The transcripts of the trial and the other proceedings in part A of the [regular] Superior Court are only relevant as to historical background. The [defendant] has waived any errors that might have occurred in that court . . . ." (Emphasis in original.)

127 (b).[1] Instead, I would conclude that the language of the statute and its legislative history reveal that the legislature intended to provide juveniles with an opportunity to contest their transfer at a hearing in the juvenile court. Accordingly, I would affirm the judgment of the Appellate Court, which had reversed the trial court's judgment convicting the defendant of assault in the second degree as an accessory, a class D felony, following the transfer of his case from the juvenile docket to the regular criminal docket of the Superior Court without conducting a hearing in the juvenile court.

The majority opinion holds that the juvenile court's transfer of a class C, class D or unclassified felony is a "ministerial act." In my view, this conclusion completely ignores the fact that on two separate occasions in 1995 during the debate on the bill that resulted in the current statutory scheme, members of the legislature proposed amendments to the bill that would have made the transfer of these cases automatic upon the filing of a motion. Significantly, both amendments containing the aforesaid language were eventually rejected by the legislature in favor of the language "approval by the court," later changed to "order of the court." General Statutes (Rev. to 2005) § 46b-127 (b). The rejection of these two amendments is a strong indication of the legislative intent to allow the juvenile court judge discretion to order or reject a transfer of the juvenile who was charged with commission of the aforesaid offenses. See 2A N. Singer & J. Singer, Sutherland Statutory Construction (7th Ed. 2008) § 48.18, pp. 621–22 ("the rejection of an amendment indicates that the legislature does not intend the bill to include the provisions embodied

[1] Although I agree with the majority that a hearing in the criminal court satisfies due process requirements, I disagree that such a hearing satisfies the requirements of § 46b-127 (b). I also note that such a hearing also satisfies due process concerns if held in juvenile court.

All references in this opinion to § 46b-127 are to the 2005 revision, unless otherwise indicated.

in the rejected amendment"). The importance of the legislative action is not mentioned by the majority. For this reason, coupled with other relevant legislative history, including comments by the original sponsor of the bill, as well as the inclusion of the language "order of the court," I dissent.

I agree with the majority with respect to the standard of review. The issue of whether the failure to provide a hearing in the juvenile court to afford the defendant an opportunity to contest his transfer violated the requirements of § 46b-127 (b) is a question of law, over which we exercise plenary review. *Ziotas* v. *Reardon Law Firm, P.C.*, 296 Conn. 579, 587, 997 A.2d 453 (2010). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation. . . . Additionally, statutory silence does not necessarily equate to ambiguity." (Internal quotation marks omitted.) *Hartford/Windsor Healthcare Properties,*

*LLC* v. *Hartford*, 298 Conn. 191, 197–98, 3 A.3d 56 (2010).

At the outset, I note that, at oral argument before this court, the state conceded that a hearing of some sort must take place in juvenile court regarding the transfer of class C, class D or unclassified felonies. The state, however, would limit that hearing to: (1) a finding of probable cause; (2) a finding that the age of the juvenile was fourteen years or over; and (3) a finding that the crime charged is a class C, class D or unclassified felony. Therefore, the dispute, as far as the state is concerned, is not the question of whether a hearing should take place but, rather, the extent of that hearing. I would allow the juvenile to further object to the transfer by argument of counsel, on the basis of the juvenile's prior record and involvement or lack thereof in the crime.

I begin my analysis with the relevant statutory text. General Statutes (Rev. to 2005) § 46b-127 (b) provides: "Upon motion of a juvenile prosecutor and *order of the court*, the case of any child charged with the commission of a class C or D felony or an unclassified felony shall be transferred from the docket for juvenile matters to the regular criminal docket of the Superior Court, provided such offense was committed after such child attained the age of fourteen years and the court finds ex parte that there is probable cause to believe the child has committed the act for which he is charged. The file of any case so transferred shall remain sealed until such time as the court sitting for the regular criminal docket accepts such transfer. The court sitting for the regular criminal docket may return any such case to the docket for juvenile matters not later than ten working days after the date of the transfer for proceedings in accordance with the provisions of this chapter. The child shall be arraigned in the regular criminal docket of the Superior Court by the next court date

following such transfer, provided any proceedings held prior to the finalization of such transfer shall be private and shall be conducted in such parts of the courthouse or the building wherein court is located as shall be separate and apart from the other parts of the court which are then being held for proceedings pertaining to adults charged with crimes." (Emphasis added.)

I would conclude that the plain language of § 46b-127 (b) indicates that the legislature intended to vest the juvenile court with discretion over whether to transfer the case of a juvenile charged with a class C or D felony or an unclassified felony. Specifically, the statute requires an *"order of the court"* prior to any case involving a class C or D felony or an unclassified felony being transferred from the juvenile court to the adult court. General Statutes (Rev. to 2005) § 46b-127 (b). The statute does not define the term order of the court. "When a statute does not provide a definition, words and phrases in a particular statute are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term." (Internal quotation marks omitted.) *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 633, 6 A.3d 60 (2010). Quoting from a treatise, Black's Law Dictionary provides as follows: " 'An order is the mandate or determination of the court upon some subsidiary or collateral matter arising in an action, not disposing of the merits, but adjudicating a preliminary point or directing some step in the proceedings.' " Black's Law Dictionary (9th Ed. 2009) p. 1206, quoting 1 H. Black, A Treatise on the Law of Judgments (2d Ed. 1902) § 1, p. 5. Accordingly, I would conclude that the legislature's use of the term order of the court in § 46b-127 (b) indicates that the legislature intended the juvenile court to make a determination as to whether the case is appropriate for transfer to the adult court.

Indeed, if the legislature had intended the phrase order of the court to be merely a ministerial act, as contended by the majority, it could easily have said that upon a finding of probable cause, verification that the juvenile was over the age of fourteen, and that the crime was a class C, D or unclassified felony, the juvenile court shall transfer the case to the adult court. Instead, the legislature inserted the phrase "[u]pon motion of a juvenile prosecutor and order of the court . . . ." General Statutes (Rev. to 2005) § 46b-127 (b). Further, I reject the premise enunciated by the majority to the effect that the use of the discretionary word "may" in the transfer statute would result in a duplication of effort, since the adult criminal court has discretion to send the case back to the juvenile court. First, it is axiomatic that if the juvenile court had discretion, it could reject the transfer and there would not be any duplication of effort. Second, the fact that a juvenile judge may approve the transfer should not affect the motivation of a prosecutor in criminal court to pursue the case or for another judge to send the matter back to juvenile court. The motivation may be different for the respective parties. I certainly do not dispute the majority's proposition that the criminal court has discretion to accept or reject the matter. The hearing that I contemplate in juvenile court, however, would probably take ten to fifteen minutes. I do not consider this time period to be overly burdensome, even if another hearing were to take place in criminal court.

Furthermore, an examination of subsection (a) of § 46b-127, which sets forth the procedure for transferring any case involving a class A or B felony, provides further evidence that the legislature intended the juvenile court to be vested with some discretion over the transfer of a class C, D or an unclassified felony. General Statutes (Rev. to 2005) § 46b-127 (a) provides in relevant part: "*The court shall automatically transfer* from the

docket for juvenile matters to the regular criminal docket of the Superior Court the case of any child charged with the commission of a capital felony, a class A or B felony or a violation of section 53a-54d, provided such offense was committed after such child attained the age of fourteen years and counsel has been appointed for such child if such child is indigent. Such counsel may appear with the child but shall not be permitted to make any argument or file any motion in opposition to the transfer. . . ." (Emphasis added.) The use of the phrase "[t]he court shall automatically transfer" in subsection (a) of General Statutes (Rev. to 2005) § 46b-127 indicates that, where the legislature wanted to require the juvenile court to transfer a case without providing it with any discretion, it knew how to do so. In contrast, § 46b-127 (b) only provides that "[u]pon motion of a juvenile prosecutor and *order of the court, the case . . . shall be transferred* from the docket for juvenile matters to the regular criminal docket of the Superior Court . . . ." (Emphasis added.) General Statutes (Rev. to 2005) § 46b-127 (b). Indeed, if the legislature had intended the juvenile court to be without discretion in these matters, it could have provided, as it did in § 46b-127 (a), language to the effect that "upon motion of a juvenile prosecutor, the court shall transfer the case." Furthermore, in § 46b-127 (a), the legislature explicitly provided that "counsel may appear with the child but shall not be permitted to make any argument or file any motion in opposition to the transfer." General Statutes (Rev. to 2005) § 46b-127 (a). The legislature did not include similar language regarding the role of the child's counsel in proceedings under subsection (b). I would conclude that the legislature's omission of both the mandatory transfer language and the explicit prohibition against argument by counsel from subsection (b) of § 46b-127 indicates that it intended the court to have a level of discretion in the transfer of cases under that

subsection that it did not intend for cases under subsection (a) of § 46b-127. See *Saunders* v. *Firtel*, 293 Conn. 515, 527, 978 A.2d 427 (2009) ("when a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]).

Nevertheless, I agree with the Appellate Court's conclusion in the present case that "[§ 46b-127 (b)], however, does not provide guidance to the court on what discretion the court has to consider a motion to transfer." *State* v. *Fernandes*, 115 Conn. App. 180, 187, 971 A.2d 846 (2009). Accordingly, in accordance with § 1-2z, I would look to the legislative history of § 46b-127 to determine what level of discretion the legislature intended the juvenile court to have when considering a motion to transfer.

As the majority explains, § 46b-127 underwent substantial revisions in 1995 and was replaced with the predecessor to the scheme that operates today. I would point out that the pre-1995 scheme was different from the current scheme in three ways. First, as the majority acknowledges, prior to 1995, § 46b-127 only allowed for the transfer of the most serious felony offenses, which were specifically enumerated in the statute, including murder, assault, sexual assault, kidnapping, burglary, robbery and some firearm related crimes. General Statutes (Rev. to 1993) § 46b-127 (a), as amended by Public Acts, Spec. Sess., July, 1994, No. 94-2, § 6. Second, the statute set forth a detailed procedure for the probable cause hearing. General Statutes (Rev. to 1993) § 46b-127 (b), as amended by Public Acts, Spec. Sess., July, 1994, No. 94-2, § 6. Third, if the court made a finding of probable cause, any child, except for those charged with the commission of murder, could request a hearing to present evidence that the case should not be trans-

ferred to the criminal docket because the child met one of the following criteria: (1) the child is a person with mental retardation; (2) the child suffers from a substantial mental disorder; or (3) an alternative plan or placement within the juvenile justice system has been arranged that will protect the community from further criminal conduct by the child. See General Statutes (Rev. to 1993) § 46b-127 (c), as amended by Public Acts, Spec. Sess., July, 1994, No. 94-2, § 6.

In 1995, the legislature undertook substantial amendments to § 46b-127. See Public Acts 1995, No. 95-225, § 13 (P.A. 95-225). In making these amendments, the legislature acknowledged that it was trying "to fix what most people considered to be a broken criminal juvenile justice system." 38 H.R. Proc., Pt. 8, 1995 Sess., p. 2933, remarks of Representative Michael P. Lawlor. Indeed, a review of the legislative discussions surrounding the 1995 amendments demonstrates that the legislature sought to allow for more transfers of cases involving juveniles in an effort to address the juvenile crime problems that the state was experiencing. See, e.g., id., p. 2942.

Representative Lawlor, the sponsor of the bill in the House of Representatives, acknowledged that "what we've intended to do is make it identical to the process by which cases are transferred between the two levels of the adult court. . . . So if the prosecutors make the motion to transfer in the adult system, the case automatically goes to the [p]art A court, the higher court. Technically the judges retain some overall control on that process. They may feel there's too many cases coming, they may feel a case is really not serious enough. But I think most attorneys at least in the hall who do criminal cases would acknowledge that any time a prosecutor wants to send a case to [p]art A, it generally goes. We've attempted to use the same exact procedures for the transfer from the juvenile court to

the adult court. Just to safeguard that not too many cases are transferred, such that they can't be prosecuted, but at the same time give the maximum discretion to the prosecutors that whenever they want to send any felony, not just the [c]lass A or B felony, but any felony to the adult court, that transfer is automatic. In other words, there's no procedural steps between the decision to transfer and the transfer." Id., pp. 2952–53.

I disagree with the majority's selective use of Representative Lawlor's statements. The majority quotes a portion of these comments by Representative Lawlor to support its conclusion that the juvenile court does not have discretion over whether to order the transfer. In doing so, however, the majority has completely disregarded Representative Lawlor's express statement that when a prosecutor makes a motion to transfer the case to adult court, the case will generally be transferred, however, "technically the judges retain some overall control on that process." Id. Reading Representative Lawlor's statements fully in context, I would conclude that he clearly indicated that the juvenile court would retain ultimate discretion over whether to order the transfer.

Indeed, Representative Lawlor further clarified the role of the juvenile court in answering specific questions posed by other members of the House of Representatives. Notably, Representative Philip F. Prelli disagreed that Representative Lawlor's statements, which the majority cites in its opinion, were a correct interpretation of the bill. See id., pp. 2953–54, remarks of Representative Prelli ("I disagree with his interpretation, a little bit . . . because, first of all, we're now talking about a judge in the juvenile court . . . he has to approve the transfer"). Furthermore, Representative Lawlor himself later clarified his interpretation. Representative Dale W. Radcliffe asked: "So then a judge . . . in carrying out this statute might determine that

a hearing was appropriate and might decline to automatically transfer or transfer, even on a finding of probable cause based on the four corners of an affidavit. Is that true . . . ?" Id., p. 2962. Representative Lawlor responded: "[Y]es, that's true." Id. Representative Radcliffe again asked: "I do think we have an amendment here, however, that allows a judge, ex parte, on the basis of the affidavits to find probable cause and then still does not require that judge to approve the transfer, is that correct?" Id., p. 2966. Representative Lawlor responded: "Yes, that's correct . . . ." Id.

Indeed, an examination of the process leading to P.A. 95-225 reveals that the legislature considered and rejected proposals that would have removed the language requiring "approval by the court" prior to transfer. For instance, Representative Radcliffe raised a proposed amendment to include part B felonies in the automatic transfer provision and to require that, "[o]n motion of a court advocate, the court shall transfer from the docket for juvenile matters to the regular criminal docket of the [S]uperior [C]ourt the case of any child charged with the commission of a class C or D felony or an unclassified felony . . . ." Substitute House Bill No. 7025, § 13, as amended by House Amendment Schedule B. This proposed amendment was defeated in the House of Representatives. Once the bill reached the Senate, Senator Thomas Upson raised an amendment to make the transfer of class A and B felonies automatic and to require that, "[o]n motion of a court advocate, the court shall transfer from the docket for juvenile matters to the regular criminal docket of the [S]uperior [C]ourt the case of any child charged with the commission of a class C or D felony or an unclassified felony . . . ." Substitute House Bill No. 7025, § 13, as amended by Senate Amendment Schedule A. The Senate passed the version of this bill bearing Senator Upson's amendment. The bill then was referred to the committee on conference, which recommended

rejecting this amended bill, but including class B felonies in the automatic transfer provision, which is the bill that ultimately passed both chambers. See Bill Status Report for Substitute for Raised H.B. No. 7025, available at http://cga.ct.gov/asp/cgabillstatus/cgabillstatus.asp? selBillType=Bill&bill_num=7025&which_year=1995& SUBMIT1.x=8&SUBMIT1.y=16 (last visited January 4, 2011) (noting that Senate Amendment Schedule A, originally passed in Senate on May 30, 1995, was later rejected by House of Representatives on May 31, 1995, and committee on conference recommended its rejection; thereafter, House of Representatives rejected Senate Amendment Schedule A on June 3, 1995, and Senate similarly rejected on June 5, 1995). Thus, on two occasions, members of the legislature attempted to insert language that would have made the transfer of these cases automatic upon the filing of a motion. On both occasions, these attempts were defeated and the phrase approval by the court, later changed to order of the court, remained intact. "[T]he rejection of an amendment indicates that the legislature does not intend the bill to include the provisions embodied in the rejected amendment." 2A N. Singer & J. Singer, supra, § 48.18, pp. 621–22. Accordingly, this is strong evidence that the legislature did not intend the transfer of class C, D or unclassified felonies to be automatic upon the filing of a motion by a prosecutorial authority.

As passed, P.A. 95-225 provided that § 46b-127 (b) be amended as follows: "Upon motion of a juvenile prosecutor and approval by the court, the case of any child charged with the commission of a class C or D felony or an unclassified felony shall be transferred . . . ." P.A. 95-225, § 13. The legislature did not define the phrase approval by the court. Accordingly, I turn to the dictionary definition of the term "approval" to ascertain its common usage. See *Potvin* v. *Lincoln Service & Equipment Co.*, supra, 298 Conn. 633 ("When a

statute does not provide a definition, words and phrases in a particular statute are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term." [Internal quotation marks omitted.]). The American Heritage Dictionary defines approval as "[t]he act of approving . . . [a]n official approbation . . . sanction; [f]avorable regard" and defines "approve" as "[t]o consider right or good . . . ." The American Heritage Dictionary of the English Language (3d Ed. 1992). Webster's Third New International Dictionary (1993) defines approval as "the act of approving" and defines "approve" as "to judge and find commendable or acceptable." Accordingly, I would conclude that the term approval by the court demonstrates that the legislature intended the juvenile court to have the discretion to determine whether transfer was appropriate considering all of the issues involved.

As the majority recognizes, the language approval by the court was changed to order of the court in 1998. See Public Acts 1998, No. 98-256, § 3 (P.A. 98-256). As the majority also acknowledges, there is little legislative history surrounding this change and "nothing in the brief reference to this change in legislative debates reflects any intention to make a substantive change to the statute." See footnote 11 of the majority opinion; see also 41 H.R. Proc., Pt. 15, 1998 Sess., p. 5189. Moreover, a report on Substitute House Bill 5696 prepared by the office of legislative research, which was incorporated into P.A. 98-256, indicates that the legislature intended that the change of language from approval by the court to order of the court would require even greater active involvement by the juvenile court. The report provides in relevant part as follows: "The bill requires that in order for a juvenile accused of a class C or D felony to be transfer[r]ed to adult court, the juvenile court must 'order' the transfer not just 'approve' a juvenile

prosecutor's motion to transfer." Office of Legislative Research, Amended Bill Analysis for Substitute House Bill 5696, available at http://www.cga.ct.gov/ps98/fc/ 625.htm#ba (last visited January 4, 2011). " 'Although the comments of the office of legislative research are not, in and of themselves, evidence of legislative intent, they properly may bear on the legislature's knowledge of interpretive problems that could arise from a bill.' *Harpaz* v. *Laidlaw Transit, Inc.*, 286 Conn. 102, 124 n.15, 942 A.2d 396 (2008); cf. *State* v. *Tabone*, 279 Conn. 527, 542, 902 A.2d 1058 (2006) (consulting analysis of bill by office of legislative research to ascertain legislative intent)." *State* v. *Courchesne*, 296 Conn. 622, 700, 998 A.2d 1 (2010); see also *Butts* v. *Bysiewicz*, 298 Conn. 665, 688 n.22, 5 A.3d 932 (2010). Accordingly, I would conclude that the use of the term order of the court in § 46b-127 (b) evidences the legislature's intent to allow the juvenile court to exercise discretion in deciding whether to transfer a case involving a class C, D or unclassified felony.

Although it is not dispositive in construing § 46b-127, it is important to note that my construction of § 46b-127 (b) so as to provide the juvenile court with discretion in determining whether to order the transfer of a case involving the commission of a class C, D or unclassified felony to the regular criminal docket of the Superior Court is consistent with this state's current public policy favoring extending the length of time individuals are eligible for treatment by the juvenile court. Specifically, in 2007, the legislature decided to raise the age for the jurisdiction of the juvenile court and allow the juvenile court to have jurisdiction over most crimes committed by sixteen year olds (became effective January 1, 2010) and seventeen year olds (effective January 1, 2012). See generally Public Acts, Spec. Sess., June, 2007, No. 07-4, §§ 73 through 78 (P.A. 07-4); Public Acts, Spec. Sess., September, 2009, No. 09-7, §§ 69 through 93 (P.A. 09-

7). In making these amendments, the legislature recognized the public policy in favor of making the unique resources of the juvenile court system available to more youth. The majority's interpretation of § 46b-127 (b) is inconsistent with this public policy as it reduces the number of youths who are able to utilize the juvenile court system. Accordingly, I would conclude that allowing the trial court to have discretion over transferring cases involving juveniles charged with class C, D or unclassified felonies is consistent with the public policy of this state as embodied in P.A. 07-4 and P.A. 09-7.

It is also noteworthy that in a report on P.A. 07-4, the office of legislative research stated that it left unchanged the existing law on transfers that "(1) requires juvenile cases involving serious felonies to automatically be transferred to adult court and (2) *allows prosecutors to ask* juvenile court judges to transfer other cases to adult court." (Emphasis added.) Office of Legislative Research, Amended Bill Analysis for Senate Bill 1500, available at http://cga.ct.gov/2007/BA/2007SB-01500-R00SS1-BA.htm (last visited January 4, 2011). As I have explained previously herein, "[a]lthough the comments of the office of legislative research are not, in and of themselves, evidence of legislative intent, they properly may bear on the legislature's knowledge of interpretive problems that could arise from a bill." (Internal quotation marks omitted.) *State* v. *Courchesne*, supra, 296 Conn. 700; see also *Butts* v. *Bysiewicz*, supra, 298 Conn. 688 n.22. The fact that as recently as 2007, the office of legislative research interpreted § 46b-127 (b) to allow prosecutors "to ask" a juvenile court judge to transfer a case involving a class C, D or unclassified felony further bolsters my conclusion that the trial court has discretion over whether to grant the transfer in such cases.

Accordingly, I would conclude that the language of § 46b-127 and its legislative history demonstrate that

the legislature intended to allow the juvenile court to exercise discretion in deciding whether to transfer a case involving a class C, D or unclassified felony. I would, therefore, conclude that a hearing is required in juvenile court, without evidence, but the juvenile may object to the transfer on the grounds of, inter alia, his involvement in the alleged crime and prior record, and the judge has discretion whether to transfer the case to the adult court. I would, accordingly, affirm the judgment of the Appellate Court.